In the United States District Court
For the Southern District of Georgia
Savannah Division

**Rebecca Brooks**, **Stuart Abel, III, James Martin, III,** and **Nicole Martin,**

*Plaintiffs,*

*v.*

**Thomas Mahoney III**, in his official capacity as Chairman of the Chatham County Board of Elections, **Marianne Heimes**, in her official capacity as a Board Member of the Chatham County Board of Elections, **Malinda Hodge**, in her official capacity as a Board Member of the Chatham County Board of Elections, **Antwan Lang**, in his official capacity as a Board Member of the Chatham County Board of Elections, **Debbie Rauers**, in her official capacity as a Board Member of the Chatham County Board of Elections**, Samuel E. Tillman**, in his official capacity as the Chairman of the DeKalb County Board of Registrations and Elections**, Anthony Lewis**, in his official capacity as a Member of the DeKalb County Board of Registrations and Elections, **Susan Motter**, in her official capacity as a Member of the DeKalb County Board of Registrations and Elections, **Dele Lowman Smith**, in her official capacity as a Member of the DeKalb County Board of Registrations and Elections, **Becky Vu**, in her official capacity as a Member of the DeKalb County Board of Registrations and Elections, **Mary Carole Cooney**, in her official capacity as Chairperson of the Fulton County Registration and Elections Board, **Vernetta Keith Nuriddin**, in her official capacity as Vice Chair of the Fulton County Registration and Elections Board, **Kathleen Ruth**, in her official capacity as a

Case No.: _____

**Verified Complaint for Declaratory and Injunctive Relief**

1

Member of the Fulton County Registration
and Elections Board, **Aaron Johnson**, in
his official capacity as a Member of the
Fulton County Registration and Elections
Board, **Mark Wingate**, in his official ca-
pacity as a Member of the Fulton County
Registration and Elections Board, **Carol
Wesley**, in her official capacity as Chair of
the Clayton County Board of Elections and
Registration, **Dorothy Foster Hall**, in her
official capacity as Vice Chair of the Clay-
ton County Board of Elections and Regis-
tration, **Patricia Pullar**, in her official ca-
pacity as a Member of the Clayton County
Board of Elections and Registration,
**Darlene Johnson**, in her official capacity as
a Member of the Clayton County Board of
Elections and Registration, **Diane Givens**,
in her official capacity as the Secretary of
the Clayton County Board of Elections and
Registration, **John Mangano**, in his official
capacity as Chairman of the Gwinnett
County Board of Registrations and Elec-
tions, **Ben Satterfield**, in his official capac-
ity as Vice Chairman of the Gwinnett
County Board of Registrations and Elec-
tions, **Stephen W. Day**, in his official ca-
pacity as a Member of the Gwinnett County
Board of Registrations and Elections,
**Wandy Taylor**, in her official capacity as a
Member of the Gwinnett County Board of
Registrations and Elections, **Alice
O'Lenick**, in her official capacity as a
Member of the Gwinnett County Board of
Registrations and Elections, **Phil Daniell**, in
his official capacity as Chairman of the
Cobb County Board of Elections and Regis-
trations, **Fred Aiken**, in his official capacity
as Vice Chairman of the Cobb County
Board of Elections and Registrations, **Pat
Gartland**, in his official capacity as a
Member of the Cobb County Board of Elec-

tions and Registrations, **Jessica M Brooks**, in her official capacity as Secretary of the Cobb County Board of Elections and Registrations, **Darryl O. Wilson**, in his official capacity as Assistant Secretary of the Cobb County Board of Elections and Registrations, **Tim McFalls**, in his official capacity as Chairperson of the Augusta/Richmond County Board of Elections, **Sherry T. Barnes**, in her official capacity as Vice Chair of the Augusta/Richmond County Board of Elections, **Marcia Brown**, in her official capacity as Secretary of the Augusta/Richmond County Board of Elections, **Terence Dicks**, in his official capacity as a Board Member of the Augusta/Richmond County Board of Elections, **Bob Finnegan**, in his official capacity as a Board Member of the Augusta/Richmond County Board of Elections, **Donna Morris-McBride**, in her official capacity as Chair of the Henry County Board of Elections and Registrations, **Andy Callaway**, in his official capacity as Co-Chair of the Henry County Board of Elections and Registrations, **Arch Brown**, in his official capacity as a Board Member of the Henry County Board of Elections and Registrations, **Mildred Schmelz**, in her official capacity as a Board Member of the Henry County Board of Elections and Registrations, **Brad Raffensperger**, in his official capacity as Secretary of State of the State of Georgia, **Brian Kemp,** in his official capacity as Governor of the State of Georgia.

*Defendants*

## Verified Complaint for Declaratory and Injunctive Relief

Plaintiffs Rebecca Brooks, Stuart Abel, III, James Martin, III, and Nicole Martin (collec-

3

tively "Voters") complain as follows:

## Introduction

**1.** This is a civil action for declaratory and injunctive relief concerning violations of Voters' voting and equal-protection rights by election officials' inclusion of illegal Presidential Elector results in certain counties, which inclusion unlawfully dilutes Voters' lawful votes and requires invalidation of those presidential-election results in counties with evidence that sufficient illegal ballots were included in the results to change or place in doubt the results of the November 3, 2020 presidential election in this state.

**2.** Voters seek a remedy excluding presidential-election results from such counties in the certification activities for Presidential Electors described in 3 U.S.C. § 6:

> It shall be the duty of the executive of each State, as soon as practicable after the conclusion of the appointment of the electors in such State by the final ascertainment, under and in pursuance of the laws of such State providing for such ascertainment, to communicate by registered mail under the seal of the State to the Archivist of the United States a certificate of such ascertainment of the electors appointed, setting forth the names of such electors and the canvass or other ascertainment under the laws of such State of the number of votes given or cast for each person for whose appointment any and all votes have been given or cast; and it shall also thereupon be the duty of the executive of each State to deliver to the electors of such State, on or before the day on which they are required by section 7 of this title to meet, six duplicate-originals of the same certificate under the seal of the State; and if there shall have been any final determination in a State in the manner provided for by law of a controversy or contest concerning the appointment of all or any of the electors of such State, it shall be the duty of the executive of such State, as soon as practicable after such determination, to communicate under the seal of the State to the Archivist of the United States a certificate of such determination in form and manner as the same shall have been made; and the certificate or certificates so received by the Archivist of the United States shall be preserved by him for one year and shall be a part of the public records of his office and shall be open to public inspection; and the Archivist of the United States at the first meeting of Congress thereafter shall transmit to the two Houses of Congress copies in full of each and every such certificate so received at the National Archives and Records Administration.

## Jurisdiction and Venue

**3.** This action arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution.

**4.** This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a), 2201, and 2202.

**5.** Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred or will occur in this District. Alternatively, venue is proper under 28 U.S.C. § 1391(b) because at least one of the Defendants to this action resides in this District and all Defendants reside in this State.

## Parties

**6.** All Plaintiffs are eligible registered voters in this State and were qualified to, and did, vote for a presidential candidate in the November 3, 2020 presidential election in this State.

**7.** Plaintiff Rebecca Brooks is a stay-at-home mother and a certified health coach who resides in Effingham County, Georgia.

**8.** Stuart Abel, III is a builder and developer who resides in Bryan County, Georgia.

**9.** James Martin, III is a stay-at-home father who resides in Liberty County, Georgia.

**10.** Nicole Martin works is employed at the licensing department and resides in Liberty County, Georgia.

**11.** All Defendants are persons authorized by federal and state law to be involved in the process of certifying Presidential Electors as described in 3 U.S.C. § 6.

**12.** Defendants Thomas Mahoney III, Marianne Heimes, Malinda Hodge, Antwan Lang, and Debbie Rauers (collectively, "**Chatham Board**") are sued in their official capacity as Members

of the Chatham County Board of Elections, which has the statutory authority to certify the election returns for Chatham County "no later than 5:00 p.m. on the second Friday following the date on which such was held and such returns shall be immediately transmitted to the Secretary of State." Ga. Code Ann. § 21-2-493(k) (West 2019). For the 2020 general election, the Chatham Board's deadline to certify Chatham County's election returns to the Georgia Secretary of State is 5:00 P.M. on November 13, 2020.

**13.** Defendants Anthony Lewis, Susan Motter, Dele Lowman Smith, Becky Vu, and Samuel E. Tillman (collectively, "**DeKalb Board**") are sued in their official capacity as Members of the DeKalb County Board of Registrations and Elections, which has the statutory authority to certify the election returns for DeKalb County "no later than 5:00 p.m. on the second Friday following the date on which such was held and such returns shall be immediately transmitted to the Secretary of State." Ga. Code Ann. § 21-2-493(k) (West 2019).[1] For the 2020 general election, the DeKalb Board's deadline to certify DeKalb County's election returns to the Georgia Secretary of State is 5:00 P.M. on November 13, 2020.

**14.** Defendants Mary Carole Cooney, Vernetta Keith Nuriddin, Kathleen Ruth, Aaron Johnson, and Mark Wingate (collectively, "**Fulton Board**") are sued in their official capacity as Members of the Fulton County Registration and Elections Board, which has the statutory authority to certify the election returns for Fulton County "no later than 5:00 p.m. on the second Friday following the date on which such was held and such returns shall be immediately transmitted to

---

[1] Under Georgia law, "[t]he General Assembly may by local Act create a board of elections in any county of this state and empower the board with the powers and duties of the election superintendent relating to the conduct of primaries and elections." Ga. Code Ann. § 21-2-40 (West 2019). All Defendant County Boards have been authorized, via local act, to act as their counties' election superintendent.

the Secretary of State."  Ga. Code Ann. § 21-2-493(k) (West 2019). For the 2020 general election, the Fulton Board's deadline to certify Fulton County's election returns to the Georgia Secretary of State is 5:00 P.M. on November 13, 2020.

**15.** Defendants Carol Wesley, Dorothy Foster Hall, Patricia Pullar, Darlene Johnson, and Diane Givens (collectively, "**Clayton Board**") are sued in their official capacity as Members of the Clayton County Board of Elections and Registration, which has the statutory authority to certify the election returns for Clayton County "no later than 5:00 p.m. on the second Friday following the date on which such was held and such returns shall be immediately transmitted to the Secretary of State."  Ga. Code Ann. § 21-2-493(k) (West 2019). For the 2020 general election, the Clayton Board's deadline to certify Clayton County's election returns to the Georgia Secretary of State is 5:00 P.M. on November 13, 2020.

**16.** Defendants John Mangano, Ben Satterfield, Stephen W. Day, Wandy Taylor, and Alice O'Lenick, (collectively, "**Gwinnett Board**") are sued in their official capacity as Members of the Gwinnett County Board of Registrations and Elections, which has the statutory authority to certify the election returns for Gwinnett County "no later than 5:00 p.m. on the second Friday following the date on which such was held and such returns shall be immediately transmitted to the Secretary of State."  Ga. Code Ann. § 21-2-493(k) (West 2019). For the 2020 general election, the Gwinnett Board's deadline to certify Gwinnett County's election returns to the Georgia Secretary of State is 5:00 P.M. on November 13, 2020.

**17.** Defendants Phil Daniell, Fred Aiken, Pat Gartland, Jessica M Brooks, and Darryl O. Wilson (collectively, "**Cobb Board**") are sued in their official capacity as Members of the Cobb County Board of Elections and Registration, which has the statutory authority to certify the elec-

tion returns for Cobb County "no later than 5:00 p.m. on the second Friday following the date on which such was held and such returns shall be immediately transmitted to the Secretary of State." Ga. Code Ann. § 21-2-493(k) (West 2019). For the 2020 general election, the Cobb Board's deadline to certify Cobb County's election returns to the Georgia Secretary of State is 5:00 P.M. on November 13, 2020.

**18.** Defendants Tim McFalls, Sherry T. Barnes, Marcia Brown, Terence Dicks, and Bob Finnegan, (collectively, "**Augusta/Richmond Board**")[2] are sued in their official capacity as Members of the Augusta/Richmond County Board of Elections, which has the statutory authority to certify the election returns for Richmond County "no later than 5:00 p.m. on the second Friday following the date on which such was held and such returns shall be immediately transmitted to the Secretary of State." Ga. Code Ann. § 21-2-493(k) (West 2019). For the 2020 general election, the Augusta/Richmond Board's deadline to certify Richmond County's election returns to the Georgia Secretary of State is 5:00 P.M. on November 13, 2020.

**19.** Defendants Donna Morris-McBride, Andy Callaway, Arch Brown, and Mildred Schmelz, (collectively, "**Henry Board**") are sued in their official capacity as Members of the Henry County Board of Elections and Registration, which has the statutory authority to certify the election returns for Henry County "no later than 5:00 p.m. on the second Friday following the date on which such was held and such returns shall be immediately transmitted to the Secretary of State." Ga. Code Ann. § 21-2-493(k) (West 2019). For the 2020 general election, the Henry Board's deadline to certify Henry County's election returns to the Georgia Secretary of State is

---

[2] The City of August, Georgia and Richmond County, Georgia have a combined government for the purposes of the Board of Elections.

5:00 P.M. on November 13, 2020.

**20.** Defendant Brad Raffensperger, sued in his official capacity, is the Secretary of State of the State of Georgia. Under Ga. Code Ann. § 21-2-499(b) (West 2019), the Secretary of State shall, "upon receiving [from the various county superintendents] the certified returns for presidential electors, proceed to tabulate, compute, and canvass the votes cast for each slate of presidential electors and shall immediately lay them before the Governor." The Secretary of State must certify and lay the returns for presidential electors before the Governor no later than 5:00 p.m. on the seventeenth day following the date on which the election was conducted. *Id.* For the 2020 general election, Defendant Brad Raffensperger's deadline to lay the returns for presidential electors before the Governor is 5:00 P.M. on November 20, 2020.

**21.** Defendant Governor Kemp, sued in his official capacity, is required as the state "executive" to finalize, execute, and send required certificates for Presidential Electors under 3 U.S.C. § 6. Under Ga. Code Ann. § 21-2-499(b) (West 2019), the Governor "shall certify the slates of presidential electors no later than 5:00 P.M. on the eighteenth day following the date on which such election was conducted." For the 2020 general election, Defendant Brian Kemp's deadline to certify the slates of presidential electors is 5:00 P.M. on November 21, 2020.

### Facts

**22.** The state certification of Presidential Electors prescribed in 3 U.S.C. § 6, will occur this year by December 8, and the Electoral College votes on December 14. Voters seek a decision from this Court well before then to allow for possible appeal as necessary, as set out in a separate motion for expedited consideration.

**23.** Under Georgia law, the elections supervisor in each county will certify its elections re-

sults to the Georgia Secretary of State by 5:00 P.M. on November 13, 2020. *See supra*, ¶¶ 12-19. The Georgia Secretary of State will certify and lay the returns for presidential electors before the Governor by 5:00 P.M. on November 20, 2020. *See supra*, ¶ 20. The Governor of the State of Georgia will certify the certify the slates of presidential electors by 5:00 P.M. on November 21, 2020. *See supra*, ¶ 21. Accordingly, Defendant Brian Kemp must certify the results of the election of Presidential Electors by December 8, 2020.

***Presidential-Election Results in Key Counties***

**24.** The current presidential election results for Chatham County count 78,369 ballots cast for Joe Biden and 53,288 ballots cast for Donald Trump, a difference of 25,081 ballots. *2020 Presidential Election*, Georgia Secretary of State, Chatham County,

https://results.enr.clarityelections.com/GA/Chatham/105395/web.264614/#/summary?v=270684 %2F (last visited on Nov. 10, 2020).

**25.** The current presidential election results for DeKalb County count 308,102 ballots cast for Joe Biden and 58,361 ballots cast for Donald Trump, a difference of 249,741 ballots. *2020 Presidential Election*, Georgia Secretary of State, DeKalb County,

https://results.enr.clarityelections.com/GA/DeKalb/105414/web.264614/#/summary?v=270672% 2F (last visited on Nov. 10, 2020).

**26.** The current presidential election results for Fulton County count 379,095 ballots cast for Joe Biden and 136,716 ballots cast for Donald Trump, a difference of 242,379 ballots. *2020 Presidential Election*, Georgia Secretary of State, Fulton County,

https://results.enr.clarityelections.com/GA/Fulton/105430/web.264614/#/summary?v=270189%2 F (last visited on Nov. 10, 2020).

**27.** The current presidential election results for Clayton County count 95,476 ballots cast for Joe Biden and 15,813 ballots cast for Donald Trump, a difference of 79,663 ballots. *2020 Presidential Election*, Georgia Secretary of State, Clayton County,

https://results.enr.clarityelections.com/GA/Clayton/105401/web.264614/#/summary?v=270528%2F (last visited on Nov. 10, 2020).

**28.** The current presidential election results for Gwinnett County count 241,827 ballots cast for Joe Biden and 166,413 ballots cast for Donald Trump, a difference of 75,414 ballots. *2020 Presidential Election*, Georgia Secretary of State, Gwinnett County,

https://results.enr.clarityelections.com/GA/Gwinnett/105437/web.264614/#/summary?v=270282%2F (last visited on Nov. 10, 2020).

**29.** The current presidential election results for Cobb County count 221,844 ballots cast for Joe Biden and 165,459 ballots cast for Donald Trump, a difference of 56,385 ballots. *2020 Presidential Election*, Georgia Secretary of State, Cobb County,

https://results.enr.clarityelections.com/GA/Cobb/105403/web.264614/#/summary?v=270728%2F (last visited on Nov. 10, 2020).

**30.** The current presidential election results for Richmond County count 59,124 ballots cast for Joe Biden and 26,781 ballots cast for Donald Trump, a difference of 32,343 ballots. *2020 Presidential Election*, Georgia Secretary of State, Richmond County,

https://results.enr.clarityelections.com/GA/Richmond/105491/web.264614/#/summary?v=270785%2F  (last visited on Nov. 10, 2020).

**31.** The current presidential election results for Henry County count 73,276 ballots cast for Joe Biden and 48,187 ballots cast for Donald Trump, a difference of 25,089 ballots. *2020 Presi-*

*dential Election*, Georgia Secretary of State, Henry County,

https://results.enr.clarityelections.com/GA/Henry/105445/web.264614/#/summary?v=270727%2

F   (last visited on Nov. 10, 2020).

**32.** The current presidential election results for the State of Georgia count 2,469,707 ballots

cast for Joe Biden and 2,457,141 ballots cast for Donald Trump, a difference of 12,566 ballots.

*2020 Presidential Election*, Georgia Secretary of State,

https://results.enr.clarityelections.com/GA/105369/web.264614/#/summary (last visited on Nov.

10, 2020).

### *Sufficient Evidence Exists to Place in Doubt Presidential-Election Results in Key Counties*

**33.** There exists sufficient evidence to place in doubt the November 3 presidential-election

results in identified key counties. Some of that evidence follows.

**34.** Voting machines crashed in Georgia's Spalding and Morgan Counties on the morning of

the election, due to the same software "glitch" that caused Michigan votes to be miscalculated.

Law Officer Article, attached to the Declaration of James Bopp, Jr., as Exhibit 1,

https://www.lawofficer.com/two-georgia-counties-using-same-software-of-michigan-counties-en

counter-software-glitches/

**35.** Vincent Chavis, a voter from Deluth, Georgia reported to the True the Vote Validate the

Vote Project Hotline ("Hotline"), that an absentee ballot was requested and submitted in his

name although he voted in person and did not use an absentee ballot.

**36.** Shirley Bailey, a voter from Armuchee, Georgia reported to the Hotline that when she

went to her local precinct to vote on November 3, she was told she had early voted when she had

not done so. She was then given an absentee ballot to fill out and put in a bag, but never received

confirmation this issue was resolved.

**37.** Wilbert Johnson, a voter in the military reported to the Hotline that he never received his requested ballot.

**38.** Lynn Miller, a voter from Conyers, Georgia reported to the Hotline that her mother received a ballot in the mail addressed to someone she knew to be deceased and who lived in Florida prior to her death.

**39.** David Shafer, the chairman of the Georgia Republican Party, reported that "Fulton County election officials told the media and the GOP observers that they were shutting down the tabulation center at State Farm Arena at 10:30p.m. on election night only to continue counting ballots in secret until 1:00a.m."

**40.** Judicial Watch conducted a study in September 2020, using the most recent registration data posted by Georgia. Judicial Watch compared this data to the Census Bureau's most recent five-year population estimates, gathered by the American Community Survey (ACS). According to this study, several counties in Georgia have voter registration lists that exceed 100% of the eligible voters in that county. These counties and their respective percentage of eligible voters according to this study include: Bryan (118%), Forsyth (114%), Dawson (113%), Oconee (111%), Fayette (111%), Fulton (109%), Cherokee (109%), Jackson (107%), Henry (106%), Lee (106%), Morgan (105%), Clayton (105%), DeKalb (105%), Gwinnett (104%), Greene (104%), Cobb (104%), Effingham (103%), Walton (102%), Rockdale (102%), Barrow (101%), and Douglas (101%). Judicial Watch Study, attached to the Declaration of James Bopp, Jr., attached as Exhibit 2, https://www.judicialwatch.org/press-releases/new-jw-study-voter-registration/

**41.** Just Facts conducted a study, using data from the Census Bureau, past surveys in which non-citizens admitted they were registered to vote and did in fact vote, and other data-driven analysis to arrive at an estimate that as many as 73,975 votes were cast for Joe Biden in Georgia by non-citizens. Just Facts Article, attached to the Declaration of James Bopp, Jr., attached as Exhibit 3,

https://www.justfactsdaily.com/quantifying-illegal-votes-cast-by-non-citizens-in-the-battleground-states-of-the-2020-presidential-election . While Geogia requires people attest he/she is a U.S. Citizen before registering to vote in federal elections, it does not require any documentary evidence of such to be provided. *Id.* Non-citizens frequently obtain fraudulent documents, such as Social Security cards, and those fraudulent numbers could be used on a voter registration form, and a significant number of non-citizens have admitted to registering to vote and casting ballots in elections in states throughout the country, including Georgia. *Id.*

**42.** Defendant Brad Raffensperger has ordered all of Georgia's 159 counties to conduct a hand recount and audit of all votes cast in the presidential race, which is viewed as an "extraordinary step." *See* Wall Street Journal Article, attached to the Declaration of James Bopp, Jr., attached as Exhibit 4,

https://www.wsj.com/articles/georgia-orders-hand-recount-in-presidential-race-11605111529.

**43.** In Georgia, among ballots that only voted for President and no other races, Joe Biden won more than 99% of those ballots (Biden: 95,801 to Trump: 818). The statistical probability against that type of imbalance happening with only ballots which were legitimately cast is astronomical. *See* National Pulse Article, attached to the Declaration of James Bopp, Jr., attached as Exhibit 5, https://thenationalpulse.com/news/case-against-biden-win/.

**44.** This evidence suffices to place in doubt the November 3 presidential-election results in identified counties and/or the state as a whole.

***Further Evidence To Be Provided From Relevant Records***

**45.** In addition to the foregoing evidence, Voters will provide evidence, upon information and belief, that sufficient illegal ballots were included in the results to change or place in doubt the November 3 presidential-election results. This will be in the form of expert reports based on data analysis comparing state mail-in/absentee, provisional, and poll-book records with state voter-registration databases,[3] United States Postal Service ("USPS") records, Social Security records, criminal-justice records, Georgia Department of Driver Services records, and other governmental and commercial sources by using sophisticated and groundbreaking programs to determine the extent of illegal voters and illegal votes, including double votes, votes by ineligible voters, votes by phantom (fictitious) voters, felon votes (where illegal), non-citizen votes, illegal ballot harvesting, and pattern recognition to identify broader underlying subversion of the election results. Plaintiffs have persons with such expertise and data-analysis software already in place who have begun preliminary analysis of available data to which final data, such as the official poll list, will be added and reports generated.

**46.** Upon information and belief, the expert report will identify persons who cast votes illegally by casting multiple ballots, were deceased, had moved, or were otherwise not qualified to vote in the November 3 presidential election, along with evidence of illegal ballot stuffing, ballot

---

[3] "Poll-book records" and "Poll lists" are not statutorily defined terms under Georgia law. Voters use these terms to refer to the official record of people who cast ballots in the 2020 general election, either in paper or electronic form. Voter-registration databases includes lists of voters using a Federal Postcard Application to register and vote, and any reports documenting voters contacted to cure rejected ballots.

harvesting, and other illegal voting. This evidence will be shortly forthcoming when the relevant official documents are final and available, for which discovery may be required, and the result of the analysis and expert reports based thereon will show that sufficient illegal ballots were included in the results to change or place in doubt the November 3 presidential-election results.

**47.** Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm unless the injunctive relief requested herein is granted.

## Claims

### Count I
### Certifying Presidential Electors Without Excluding Certain Counties Would Violate Voters' Fundamental Right to Vote by Vote-Dilution Disenfranchisement.
### (42 U.S.C. § 1983; U.S. Const. amends. 1 and 14)

**48.** Plaintiffs re-allege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

**49.** Certifying Presidential Electors without excluding certain counties would violate voters' fundamental right to vote by vote-dilution disenfranchisement.

**50.** The counties at issue are those identified in the Facts where sufficient illegal ballots were included in the results to change or place in doubt the November 3 presidential-election results.

**51.** The right to vote, with the included right to have one's vote counted, is protected by the First and Fourteenth Amendments and is fundamental, *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966), and well-established: "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections" and to have that vote counted, *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).

**52.** "The right to vote can neither be denied outright, nor destroyed by alteration of ballots,

16

nor diluted by ballot-box stuffing." *Id.* at 555 (internal citations omitted). "And the right of suf-frage can be denied by a debasement or dilution of the weight of a citizen's vote just as effec-tively as by wholly prohibiting the free exercise of the franchise." *Id.*

**53.** If Defendants certify presidential-election results from counties where sufficient illegal ballots were included in the results to change or place in doubt the November 3 presidential-elec-tion result, Voters valid, legal votes will be unconstitutionally diluted by illegal votes.

**54.** As recognized in *Donald J. Trump for President v. Bullock*, 2020 WL 5810556 (D. Mont. Sept. 30, 20200, individual voters have standing to bring a vote-dilution disenfranchise-ment claim, *id.* at *7 & n.4. "[T]he Supreme Court has repeatedly enumerated the principle that claims alleging a violation of the right to vote can constitute an injury in fact despite the wide-spread reach of the conduct at issue." *Id.* at 7. *See also Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) ("[A] person's right to vote is 'individual and personal in nature,'" so "'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that dis-advantage" (citations omitted)). Under the generalized-grievance formulations in *Lujan v. De-fenders of Wildlife*, 504 U.S. 555 (1992), this claim is not a generalized grievance. *Lujan* said it turns on whether a plaintiff (i) is merely asserting "citizen" standing, i.e., the same claim that could be asserted by "every citizen," and (ii) just trying to make the government do its job. *Id.* at 560-61. Voters don't bring their claims under mere "citizen" standing but rather assert personal harms from the violation of their own fundamental right to vote. Their claim is particularized, challenging only what violates their rights. Their harm is not the same as for every "citizen." "[D]enying standing to persons who are in fact injured simply because many others are also in-jured, would mean that the most injurious and widespread Government actions could be ques-

tioned by nobody." *United States v. SCRAP*, 412 U.S. 660, 686-68 (1973); *see also, FEC v. Akins*, 524 U.S. 11, 24 (1998). Voters' harm is four levels more specific than "every citizen['s]" for their claim: (1) within "citizens" are those eligible to register as voters—only they have the potential to become registered voters; (2), within eligible voters are registered voters—only they have a right to vote; (3) within eligible, registered voters are those who actually voted—only they have a vote subject to vote-dilution disenfranchisement; and (4) within these eligible, registered, voters who actually voted are those in a jurisdiction where there are counties with evidence that sufficient illegal ballots were included in the results to change or place in doubt the results of the November 3 presidential election. Those very specific voters with a very specific claim don't assert a generalized grievance, and they include Voters. Thus, Voters have standing.

55. As established in the Facts discussion, existing and forthcoming evidence establish that in identified counties illegal voting has occurred in connection with the presidential-election results, which establishes that Voters' votes have been unconstitutionally diluted. So the presidential-election elections in those counties should be invalidated and not included in the certification of votes for selecting Presidential Electors.

56. The relevant standard for invalidating election results from a particular jurisdiction generally is that "'the party contesting the election demonstrates an irregularity or illegality sufficient to change or place in doubt the result.'" 26 Am. Jur. 2d Elections § 389  (quoting *Gore v. Harris*, 772 So.2d 1234 (Fla. 2000), *rev'd on other grounds*, *Bush v. Gore*, 531 U.S. 98 (2000)). "Ordinarily, an election may be contested only for matters that would impeach the fairness of the result." *Id.* (citing *Duncan v. McMurray*, 249 S.W.2d 156 (Ky. 1952); *Appeal of Soucy*, 649 A.2d 60 (N.H. 1994); *Fielding v. South Carolina Election Com'n*, 408 S.E.2d 232 (S.C. 1991). "An

election will not be invalidated unless the party contesting the election demonstrates an irregularity or illegality sufficient to change or place in doubt the result." *Id.* (citing *Middleton v. Smith*, 539 S.E.2d 163 (Ga. 2000)).

**57.** In *Harris*, the Florida statute included as grounds for contesting an election "'Receipt of a number of illegal votes or rejection of a number of legal votes sufficient to change or place in doubt the result of the election.'" 772 So.2d at 1250 (citation and emphasis omitted). *Harris* summarized the standard thus: "It is not enough to show a reasonable possibility that election results could have been altered by such irregularities, or inaccuracies, rather, a reasonable probability that the results of the election would have been changed must be shown." *Id.* at 1255.

**58.** This generally recognized standard is reflected in this State's laws. Ga. Code Ann. § 21-2-522 (West 2019) (a result of an election may be contested on the grounds that "illegal votes have been received or legal votes rejected at the polls sufficient to change or place in doubt the result"). *See generally*, *Democratic Party of Georgia, Inc. v. Crittenden*, 347 F. Supp. 3d 1324 (N.D. Ga. 2018); *Parham v. Stewart*, 308 Ga. 170 (2020).

**59.** Regarding evidence for invalidating election results in a jurisdiction, *Harris* established that the required showing could be made (inter alia) by "credible statistical evidence" establishing a changed election outcome "by a preponderance of a reasonable probability," *id.*:

> In this case, there is no credible statistical evidence, and no other competent substantial evidence to establish by a preponderance of a reasonable probability that the results of the statewide election in the State of Florida would be different from the result which has been certified by the State Elections Canvassing Commission.

**60.** In addition to *states* routinely providing for invalidating election results, including in the Presidential Electors context, the U.S. Supreme Court *itself* in *Bush*, 531 U.S. 98, required that

19

partial recounts in some counties (that unconstitutionally employed different and unclear standards for determining voter intent) be excluded from the final count in the Florida 2000 presidential election because of the constitutional flaws identified, *id.* at 107-12.

61. The foregoing articulations of the standard for invalidating election results in a particular jurisdiction—including proof of reasonable probability by credible statistical evidence—should be applied here to determine whether the election results in certain counties should be excluded for purposes of certifying Presidential Electors. In some situations where election results are invalidated, a new election is ordered. *See, e.g.*, *Pabey v. Pastrick*, 816 N.E.2d 1138 (Ind. 2004). But with the Electoral College scheduled to be certified by December 8 and to meet and vote on December 14, 2020, there is insufficient time for a new election in the counties involved. Moreover, the Electoral College is unique and statutory provisions provide special procedures for moving the Electoral College vote along expeditiously since the presidency is at issue. So the proper remedy here is to exclude the results from jurisdictions meeting the standard for disqualifying elections from the final results that are certified and reported for Presidential Electors.

62. Because illegal votes dilute legal votes, the evidence establishes, and will establish, that the rights of Voters have been violated by vote-dilution disenfranchisement. Consequently, the presidential-election results from the counties identified should not be included in certified and reported totals for Presidential Electors from this state.

## Prayer for Relief

63. Declare that the inclusion of illegal votes in identified counties violates Voters' right to vote under the First and Fourteenth Amendment by vote-dilution disenfranchisement.

64. Declare that the proper remedy for this constitutional violation as applied to presidential-

election results is to exclude presidential-election results from those counties for the Presidential Elector certification under 3 U.S.C. § 6 for this state.

**65.** Under that remedy, declare that there is sufficient evidence that illegal votes were counted in the identified county or counties to change or place in doubt the results of the November 3, 2020, presidential election results in contested counties, or in the state overall, so that the county's presidential-election results must be invalidated.

**66.** Enjoin Defendants from preparing and conducting the certification activities for Presidential Electors described in 3 U.S.C. § 6 (and applicable state law implementing the federal provision) without excluding the presidential-election results from the identified counties.

**67.** Award Voters their costs and attorneys fees under 42 U.S.C. § 1988 and any other applicable authority; and

**68.** Grant any and all other such relief as this Court deems just and equitable.

Date: November 11, 2020

Respectfully Submitted,

<u>/s/ Ray Smith, III</u>
Attorney Bar Number, GA 662555
SMITH & LISS, LLC
Five Concourse Parkway
Suite 2600
Atlanta, Georgia 30328
Telephone: 404-760-6000
E-Mail: rsmith@smithliss.com

*Local Counsel for Plaintiffs*

James Bopp, Jr.
Attorney Bar Number, IN 2838-84*
*Lead Counsel for Plaintiffs*
Melena S. Siebert
Attorney Bar Number, IN 35061-15*
True the Vote, Inc.
Validate the Vote Project
THE BOPP LAW FIRM, PC
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: 812/232-2434
E-Mail: jboppjr@aol.com

*\* Pro Hac Vice forthcoming*

## Verification

I, Rebecca Brooks, declare as follows:

    **1.** I am a resident of Georgia.

    **2.** If called upon to testify, I would testify competently as to the matters set forth in the foregoing *Verified Complaint for Declaratory and Injunctive Relief.*

    **3.** I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning me and my past and intended activities are true and correct to the best of my knowledge and understanding. 28 U.S.C. § 1746.

Executed on November 11, 2020.

                                                        *Rebecca Brooks*
                                                      Rebecca Brooks

## Verification

I, Stuart Abel, III, declare as follows:

**1.** I am a resident of Georgia.

**2.** If called upon to testify, I would testify competently as to the matters set forth in the foregoing *Verified Complaint for Declaratory and Injunctive Relief.*

**3.** I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning me and my past and intended activities are true and correct to the best of my knowledge and understanding. 28 U.S.C. § 1746.

Executed on November 11, 2020.

Stuart Abel, IIII

**Verification**

I, James Martin, III, declare as follows:

1. I am a resident of Georgia.

2. If called upon to testify, I would testify competently as to the matters set forth in the fore-going *Verified Complaint for Declaratory and Injunctive Relief*.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning me and my past and intended activities are true and correct to the best of my knowledge and un-derstanding. 28 U.S.C. § 1746.

Executed on November 11, 2020.



James Martin, III

### Verification

I, Nicole Martin, declare as follows:

    **1.** I am a resident of Georgia.

    **2.** If called upon to testify, I would testify competently as to the matters set forth in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*.

    **3.** I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning me and my past and intended activities are true and correct to the best of my knowledge and understanding. 28 U.S.C. § 1746.

Executed on November 11, 2020.

*Nicole Martin*

Nicole Martin

## Certificate of Service

I hereby certify that on November 11, 2020, I caused the foregoing and all exhibits and attachments thereto in the above-captioned matter to be filed with the United States District Court for the Southern District of Georgia, Savannah Division, via the Court's CM/ECF system. I also hereby certify that I caused the foregoing and all exhibits and attachments thereto in the above-captioned matter to be served, via FedEx and email, with the appropriate Waiver of the Service of Summons forms, upon:

**Chatham County, GA Board of Elections**

Chatham County Board of Elections
1117 Eisenhower Dr., Ste. F
Savannah, GA 31406

Thomas Mahoney III, Chairman, tmahoney@tmahoneylaw.com;
Marianne Heimes, Board Member, mjheimes@aol.com;
Malinda Hodge, Board Member, hodgemelinda@aol.com;
Debbie Rauers, Board Member, drauers@aol.com;
Antwan Lang, Board Member
County Attorney: R. Jonathan Hart, Rjhart@chathamcounty.org
(Board of Elections did not have Mr. Antwan Lang's email on file; County Attorney R. Jonathan Hart was served via email)

**DeKalb County Board of Registrations and Elections**

DeKalb County Government Offices
1300 Commerce Dr.
Decatur, GA 30030

Anthony Lewis, Board Member, antlewis@dekalbcountyga.gov;
Susan Motter, Board Member, smotter@dekalbcountyga.gov;
Dele Lowman Smith, Board Member, dlsmith@dekalbcountyga.gov;
Samuel E. Tillman, Board Chair, setillman@dekalbcountyga.gov;
Becky Vu, Board Member, baokyvu@dekalbcountyga.gov;
County Attorney: Viviane H. Ernstes, vernstes@dekalbcountyga.gov

23

## Certificate of Service (cont'd)

**Fulton County Registration and Elections Board**

Fulton County Government Address:
141 Pryor St. SW
Atlanta, GA 30303

Mary Carole Cooney, Chairperson, mccooney@mindspring.com;
Vernetta Keith Nuriddin, Vice Chair, vernettanuriddin@live.com
Kathleen Ruth, Member, drkayruth@icloud.com;
Aaron Johnson, Member, aaronvjohnson@yahoo.com;
Mark Wingate, Member wingate01md@gmail.com;
County Attorney: Patrise M. Perkins-Hooker patrise.perkins-hooker@fultoncountyga.gov

**Clayton County, GA Board of Elections and Registration**

Elections and Registration
Jonesboro Historical Courthouse - Main Floor
121 S. McDonough St.
Jonesboro, GA 30236

Carol Wesley, Chair ccwesley7@gmail.com;
Dorothy Foster Hall, Vice Chair, hallfosterd@hotmail.com;
Patricia Pullar, Member, pat.pullar@gmail.com;
Darlene Johnson, Member, ddgirl533@gmail.com;
Diane Givens, Secretary, dianegivens3@gmail.com;
County Attorney: Charles Reed, charles.reed@claytoncountyga.gov

## Certificate of Service (cont'd)

**Gwinnett County, GA Board of Registrations and Elections**
Gwinnett Justice & Administration Center
75 Langley Dr.
Lawrenceville, GA 30046

John Mangano, Chairman, john.mangano@gwinnettcounty.com;
Ben Satterfield, Vice Chairman, ben.satterfield@gwinnettcounty.com;
Wandy Taylor, Member, wandy.taylor@gwinnettcounty.com;
Stephen W. Day, Member, stephen.day@gwinnettcounty.com;
Alice O'Lenick, Member, alice.olenick@gwinnettcounty.com;
County Attorney: Mike Ludwiczak, mike.ludwiczak@gwinnettcounty.com

**Cobb County, GA Board of Elections and Registration**
736 Whitlock Ave. NW, Ste. 400
Marietta, GA 30064

Phil Daniell, Chairman, Phil.Daniell@cobbcounty.org;
Fred Aiken, Vice Chairman, Fred.Aiken@cobbcounty.org;
Pat Gartland, Member, Pat.gartland@cobbcounty.org;
Jessica M Brooks, Secretary, Jessica.Brooks@cobbcounty.org;
Darryl O. Wilson, Assistant Secretary, Darryl.WilsonJR@cobbcounty.org;
County Attorney: H. William Rowling, Jr., H.William.Rowling@cobbcounty.org

**Richmond County, GA Board of Elections**

Richmond County Board of Elections
535 Telfair St., Ste. 500
Augusta, GA 30901

Tim McFalls, Chairperson
Sherry T. Barnes, Vice Chair
Marcia Brown, Secretary
Terence Dicks, Board Member
Bob Finnegan, Board Member

Individual Board Member email addresses not published; all filings sent to the Richmond County
Attorney, Wayne Brown at: wbrown@augustaga.gov

## Certificate of Service (cont'd)

**Henry County, GA Board of Elections and Registration**
Henry County Administration Building
140 Henry Pkwy.
McDonough, GA 30253

Donna Morris-McBride, Chair, dmcbride@co.henry.ga.us;
Andy Callaway, Co-Chair, ccallaway@co.henry.ga.us;
Arch Brown, Board Member, archbrown@co.henry.ga.us;
Mildred Schmelz, Board Member, mschmelz@co.henry.ga.us;
County Attorney: Patrick Jaugstetter (Jarrard & Davis, L.L.P.), patrickj@jarrard-davis.com


Secretary of State Brad Raffensperger – brad@sos.ga.gov and soscontact@sos.ga.gov
214 State Capitol
Atlanta, Georgia 30334
Governor Brian Kemp – brian.kemp@georgia.gov
206 Washington St., Ste. 203
State Capitol
Atlanta, GA 30334


Attorney General Chris Carr – ccarr@georgia.org and ccarr@law.ga.gov
40 Capitol Square, SW
Atlanta, GA 30334




/s/ Ray Smith, III
Ray Smith, III
Local Counsel for Plaintiffs

26