**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| Rebecca Brooks, et al., | CIVIL ACTION NO. 20-cv-00281 |
| Plaintiffs, | |
| v. | |
| Thomas Mahoney III, et al., | |
| Defendants. | |

**PROPOSED DEFENDANT-INTERVENOR'S MOTION TO INTERVENE**

COMES NOW THE DEMOCRATIC PARTY OF GEORGIA ("DPG"), by and through its undersigned counsel of record, and files this *Motion to Intervene* in the above-referenced matter. DPG shows this Honorable Court that intervention is appropriate under Federal Rule of Civil Procedure 24(a) and (b) as follows:

### I.      INTRODUCTION

Plaintiffs seek to nullify over *two million ballots* cast in the presidential election by Georgia voters in several of the state's most populous counties. Yet that breathtaking request is utterly unsupported by even the weakest of evidentiary showings. Instead, it is framed as a "vote dilution" claim grounded in nothing more than conspiracy theory, unsupported hearsay, and imaginary "groundbreaking" expert analysis that has not actually been conducted (but which Plaintiffs contend will, upon "information and belief," support their extraordinary and highly implausible allegations). None of this is sufficient to support any form of injunctive relief, much less the astonishing and unprecedented relief Plaintiffs seek.

Indeed, the case presents neither a cogent nor cognizable legal theory. It is political theatre, part of a broader and deeply troubling attempt playing out on a national stage to use the judiciary to cast doubt on the outcome of the presidential election. Every other court confronted with these efforts has properly rejected them. This Court should do the same.

But, so long as this matter is pending and threatened, Proposed Intervenor DPG should be permitted to intervene. And, indeed, in other similar cases brought around the country, courts have universally permitted Democratic Party committees to intervene and participate as parties to protect their own and their candidates' and voters' interests against these post hoc attacks on the election. DPG easily meets all of the criteria for intervention as of right. This motion is timely, filed just two days after the complaint was filed with this Court. As the Democratic Party committee for the state of Georgia, as defined by 52 U.S.C. § 30101(15), DPG has a significant and protectable interest in the outcome of this litigation that stands to be practically impaired. Among DPG's members and constituents are eligible voters in the challenged counties who voted in the eight counties that Plaintiffs target, which include all the State's most Democratic counties. If Plaintiffs achieve the outcome they seek, hundreds of thousands of Democratic voters would be summarily and entirely disenfranchised, causing them severe, irreparable harm. The Democratic candidates on the presidential ticket will also be irreparably harmed, stripped of the votes of all the lawful, eligible voters who supported them in the counties at issue. All of this will also severely and irreparably harm DPG's core mission of working together with Georgia voters and candidates to elect Democrats to office in and from the State of Georgia. DPG's interests are not adequately represented in this litigation because the Secretary of State, Governor, and elections board members of each of the Defendant counties are state and local officials, whose interests are defined

by their duty to administer elections—interests that are distinct from DPG's interest in the protection of the franchise for its voters and its interest in the election of the President-Elect.

For the reasons that follow, this Court should find that DPG is entitled to intervene in this case as a matter of right under Rule 24(a)(2). In the alternative, DPG should be granted permissive intervention pursuant to Rule 24(b).

## II.     BACKGROUND

Almost all of the counties in Georgia have certified the results from the November general election (and all of them must complete that task by November 13), and all counties are now hand recounting each ballot. Nonetheless, Plaintiffs—four individual voters—have filed suit to invalidate millions of eligible Georgians' ballots based on nothing more concrete than the fact that they were cast in counties that overwhelmingly voted for the Democratic ticket for President.

As discussed in DPG's proposed forthcoming motion to dismiss this lawsuit is meritless on its face. It is part of a broader baseless effort to sow doubt on the results of the presidential election. Over and over again, these lawsuits have fallen flat, unable to sustain even the slightest judicial scrutiny. But they are intended to, and do, cause harm to Democratic voters, candidates, and the Democratic Party. The DPG should be permitted to intervene to represent those interests.

## III.     ARGUMENT

**A.     This Court should grant the motion to intervene as of right.**

DPG qualifies for intervention as of right. Intervention as of right must be granted when (1) the motion to intervene is timely; (2) the proposed intervenors possess an interest in the subject matter of the action; (3) denial of the motion to intervene would affect or impair the proposed intervenors' ability to protect their interests; and (4) the proposed intervenor's interests are not adequately represented by the existing parties to the lawsuit. Fed. R. Civ. P. 24(a)(2); *Georgia v.*

*U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1250 (11th Cir. 2002). DPG satisfies each of these factors.

> **1.     The motion to intervene is timely.**

DPG's motion to intervene is timely. In analyzing this factor, the Court considers

> the length of time during which the [proposed intervenors] knew or reasonably should have known of their interest in the case before moving to intervene, the extent of prejudice to the existing parties as a result of the [proposed intervenors'] failure to move for intervention as soon as they knew or reasonably should have known of their interest, the extent of prejudice to the [proposed intervenors] if their motion is denied, and the existence of unusual circumstances militating either for or against a determination that their motion was timely.

*Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). "The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Id*.

DPG sought intervention at the earliest possible stage of this action, and its intervention will neither delay the resolution of this matter nor prejudice any party. Plaintiffs filed their complaint on Veterans' Day, November 11, and this motion to intervene follows just two days later. On November 12, Plaintiff filed a Motion to Expedite, no defendant has responded (or even been served), and no hearings have been scheduled. Thus, no party can legitimately claim that intervention by DPG would cause any prejudicial delay. Under these circumstances, the motion is timely. On the other hand, DPG would suffer prejudice if this motion is denied because it will be unable to protect its own or its constituents' or candidates' interests.

> **2.     DPG has a strong interest in this action.**

DPG has significant and cognizable interests in intervening in this case to ensure that eligible Democratic voters, hundreds of thousands of whom cast their ballots in the eight targeted counties in the presidential election, are not disenfranchised as the result of Plaintiffs' meritless

and cynical attack on the results of the election. The Court's inquiry is "a flexible one, which focuses on the particular facts and circumstances surrounding" the motion. *Id*. at 1214; *Georgia*, 302 F.3d at 1251 ("To determine whether Florida possesses the requisite interest for intervention purposes, we look to the subject matter of the litigation."). Here, DPG is entitled to intervene because it is a "real parties in interest in the transaction which is the subject of the proceeding." *Chiles*, 865 F.2d at 1214 (alteration accepted). DPG, its candidates, and its members have a powerful interest in having ballots counted according to the procedures provided for under Georgia law and having election results certified to include all valid ballots. In fact, DPG's interest in opposing the relief sought is more concrete and acute than Plaintiffs' interest in bringing the litigation in the first instance: DPG's members have the right to have their ballots counted. Plaintiffs—individual voters who do not even reside in the challenged counties—have no interest or right to attempt with surgical precision to invalidate votes from eligible voters in eight counties that voted largely in favor of electing the Democratic candidate as President.

Plaintiffs are essentially asking this Court to declare over two million ballots cast among eight counties to be thrown out as "illegal" for no other reason than the fact that these counties came out strongly in favor of President-Elect Joseph Biden. Compl. ¶¶ 24-32. Putting aside the sheer lack of plausible allegations[1]—some of which have already been publicly debunked[2] and all of which are wholly unsubstantiated and largely unconnected to many of the allegations in the

---

[1] Indeed, the data that Plaintiffs say they require to form any claim are "forthcoming." Compl. ¶ 46. Courts do not generally recognize "forthcoming" allegations as sufficient to place a party on notice that it must defend itself; and this certainly cannot be the standard by which a plaintiff can drag another party into court.

[2] Jack Nicas, *No, Dominion voting machines did not delete Trump votes*, New York Times (Nov. 11, 2020), https://www.nytimes.com/2020/11/11/technology/no-dominion-voting-machines-did-not-cause-widespread-voting-problems.html?login=smartlock&auth=login-smartlock&login=smartlock&auth=login-smartlock.

challenged counties, or even the counties where Plaintiffs voted—should Plaintiffs be granted their requested relief, the DPG-supported candidate would lose lawfully-cast votes and DPG members would be disenfranchised. DPG undoubtedly has a cognizable interest in protecting its voters' fundamental rights to have their votes counted. *See Reynolds v. Sims*, 377 U.S. 533, 555 n.29 (1964) ("There is more to the right to vote than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth. The right to vote includes the right to have the ballot counted."); *cf. Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006) (holding that Texas Democratic Party had direct standing based on "harm to its election prospects").

In related circumstances, courts have held that where proposed relief carries with it the prospect of disenfranchising the Democratic Party's members, the Democratic Party had a legally cognizable interest at stake. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189 n.7 (2008) (agreeing with the unanimous view of the Seventh Circuit that the Indiana Democratic Party had standing to challenge a voter identification law that risked disenfranchising its members); *cf. Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012) (Ohio Democratic Party allowed to intervene in case where challenged practice would lead to disenfranchisement of its voters); *Stoddard v. Winfrey*, No. 20-014604-cz (Mich. Cir. Ct. Nov. 6, 2020) (in a hearing, granting intervention to the DNC in a lawsuit seeking to stop counting ballots in Detroit); Order, *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-2078 (M.D. Pa. Nov. 12, 2020), ECF No. 72 (granting intervention to DNC in lawsuit seeking to invalidate ballots in Pennsylvania); Order, *Constantino v. City of Detroit*, No. 20-014789-AW (Mich. Cir. Ct. Nov. 13, 2020) (granting the Michigan Democratic Party's motion to intervene).

**3.     Disposition of this matter would impair DPG's ability to protect its interests as a practical matter.**

DPG has at least three legally cognizable interests that might be impaired by this lawsuit and entitle DPG to intervention as of right.

*First*, there can be no doubt that disposition of this matter has the potential to impair DPG's ability to protect its interests. Plaintiffs seek to invalidate every ballot cast in eight counties where DPG's candidates were most strongly favored and where President-Elect Biden won with some of the largest margins in the state, with the obvious goal of discarding as many votes for President-Elect Biden as possible. The relief sought would disenfranchise DPG's members and, indeed, *all voters* in the eight counties that Plaintiffs have targeted, no matter who they voted for, and for no other reason than that those counties' vote totals favored President-Elect Biden. It also would threaten DPG's candidates' electoral prospects, and significantly delay the resolution of the election. In circumstances where political parties have faced similar risks of harm to their electoral prospects and mission, courts have routinely granted intervention. *E.g.*, Order, *Democratic Party of Ga., Inc. v. Crittenden*, No. 18-cv-5181 (N.D. Ga. Nov. 14, 2018), ECF No. 40 (granting intervention to political party in voting rights lawsuit); Order, *Parnell v. Allegheny Bd. of Elections*, No. 20-cv-01570 (W.D. Pa. Oct. 22, 2020), ECF No. 34 (granting intervention to Democratic Congressional Campaign Committee (DCCC) in lawsuit regarding processing of ballots); Order, *Paher v. Cegavske*, No. 20-cv-00243-MMD-WGC, 2020 WL 2042365, at *4 (D. Nev. Apr. 28, 2020), ECF No. 39 (granting DNC intervention in election case brought by conservative interest group); *Donald J. Trump for President, Inc. v. Murphy*, No. 20-cv-10753 (MAS) (ZNQ), 2020 WL 5229209, at *1 (D. N.J. Sept. 01, 2020) (granting DCCC intervention in lawsuit by Republican candidate and party entities); *Cook Cnty. Republican Party v. Pritzker*, No.

20-cv-4676 (N.D. Ill. Aug. 28, 2020), ECF No. 37 (granting DCCC intervention in lawsuit by Republican party entity); Memo. and Order, *Issa v. Newsom*, No. 20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020), ECF No. 31 (granting DCCC and California Democratic Party intervention in lawsuit by Republican congressional candidate); Order, *Donald J. Trump for President v. Bullock*, No. 20-cv-66 (D. Mont. Sept. 08, 2020), ECF No. 35 (granting DCCC, DSCC, and Montana Democratic Party intervention in lawsuit by four Republican party entities); *cf. DCCC v. Ziriax*, No. 20-CV-211-JED-JFJ, 2020 WL 5569576, at *2 (N.D. Okla. Sept. 17, 2020), ("DCCC and the Democratic candidates it supports . . . have an interest in ensuring that Democratic voters in Oklahoma have an opportunity to express their will regarding Democratic Party candidates running for elections."); *Owen v. Mulligan*, 640 F.2d 1130, 1132 (9th Cir. 1981) (holding that "the potential loss of an election" is sufficient injury to confer Article III standing). Here, the requested remedy and harm is extreme—Plaintiffs seek relief that would not just burden DPG's voters, but would completely disenfranchise them.

*Second*, Plaintiffs' requested relief of halting the certification process threatens the right to vote of DPG's members. "[T]o refuse to count and return the vote as cast [is] as much an infringement of that personal right as to exclude the voter from the polling place." *United States v Saylor*, 322 U.S. 385, 387–88 (1944). In turn, the disruptive and potentially disenfranchising effects of Plaintiffs' action would require DPG to divert resources to work several times harder to achieve their mission—as Plaintiffs are advocating for the wholesale disenfranchisement of over two million voters across eight counties thus implicating DPG's *third* protected interest. *See, e.g.*, *Ne. Ohio Coal. for Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016) (finding concrete, particularized harm where organization had to "redirect its focus" and divert its "limited resources" due to election laws); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007)

(concluding that electoral change "injure[d] the Democratic Party by compelling the party to devote resources" that it would not have needed to devote absent new law), *aff'd*, 553 U.S. 181 (2008); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc); *see also Issa*, 2020 WL 3074351, at *3 (granting intervention and citing this protected interest).

The harm to DPG and its members if Plaintiffs' requested relief is granted is incalculable and unprecedented, and DPG is therefore entitled to intervention as of right.

### 4.    DPG's interests may not be adequately represented by the existing parties.

Finally, neither Plaintiffs nor Defendants adequately represent DPG's interests. Although a would-be intervenor has some burden to establish that its interest is not adequately protected by the existing parties to the action, "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate," and therefore "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972) (citing 3B J. Moore, Federal Practice 24.09—1 (4) (1969)); *Chiles*, 865 F.2d at 1214. Where one of the original parties to the suit is a government entity whose "views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it," courts have found that "the burden [of establishing inadequacy of representation] is comparatively light." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (citing *Conservation Law Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) and *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996)); *see also Meek v. Metro. Dade Cnty., Fla.*, 985 F.2d 1471, 1478 (11th Cir. 1993), *abrogated on other*

*grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007) ("Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action.").

Here, while Defendants have an interest in defending the actions of state and local officials, DPG has different objectives: ensuring that the vote of every Democratic voter in Georgia is counted and safeguarding the election of Democratic candidates against these meritless and dangerous attacks. Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *accord Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009))). That is the case here. DPG has specific interests and concerns—from its overall electoral prospects to the most efficient use of its limited resources—that neither Defendants nor any other party in this lawsuit share. *See Paher*, 2020 WL 2042365, at *3 (granting intervention as of right where proposed intervenors "may present arguments about the need to safeguard [the] right to vote that are distinct from [state defendants'] arguments"). As one court recently explained under similar circumstances,

> While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors [including state party] are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming federal election, advancing their overall electoral prospects, and allocating their limited resources to inform voters about the election procedures. . . As a result, the parties' interests are neither "identical" nor "the same."

*Issa*, 2020 WL 3074351, at *3 (citation omitted). Because DPG's particular interests are not shared by the present parties in this litigation, they cannot rely on Defendants or anyone else to provide adequate representation. They have thus satisfied the four requirements for intervention as of right under Rule 24(a)(2). *See id.* at *3–4; *Paher*, 2020 WL 2042365, at *3.

**B.      DPG is also entitled to permissive intervention.**

If the Court does not grant intervention as a matter of right, DPG respectfully requests that the Court exercise its discretion to allow it to intervene under Rule 24(b). The Court has broad discretion to grant a motion for permissive intervention when the Court determines that: (1) the proposed intervenor's claim or defense and the main action have a question of law or fact in common, and (2) the intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b)(1)(B) and (b)(3); *Ga. Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 690 (N.D. Ga. 2014). Even where courts find intervention as of right may be denied, permissive intervention might nonetheless be proper or warranted. Moreover, "the claim or defense clause of Rule 24(b)(2) is generally given a liberal construction."*Id.*.

DPG easily meets the requirements of permissive intervention. *First*, DPG will inevitably raise common questions of law and fact, including whether Plaintiffs have standing, whether Plaintiffs' claim includes a private right of action, and whether millions of votes should be invalidated based solely on the fact that they were voted in a county where a majority of eligible voters favored President-Elect Biden. *Second*, for the reasons set forth above, the motion to intervene is timely, and given the early stage of this litigation, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. DPG is prepared to proceed in

accordance with the schedule this Court determines, and its intervention will only serve to contribute to the complete development of the factual and legal issues before the Court.

## IV.    CONCLUSION

For these reasons, Proposed Intervenor respectfully requests that the Court grant its motion to intervene as of right and, in the alternative, as permissive intervention.

Dated: November 13, 2020.                    Respectfully submitted,

/s/ TODD M. BAIAD
Todd M. Baiad
Georgia Bar No:  031605
Lucas D. Bradley
Georgia Bar No:  672136
One West Park Avenue (31401)
P.O. Box 2139
Savannah, GA 31402-2139
Telephone: (912) 232-7000
Facsimile: (912) 233-0811
tmbaiad@bouhan.com
ldbradley@bouhan.com

Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Joyce Gist Lewis
Georgia Bar No. 296261
KREVOLIN & HORST, LLC
One Atlantic Center
1201 West Peachtree Street, NW
Suite 3250 | Atlanta, GA 30309
Tel: 404-888-9700
hknapp@khlawfirm.com
jlewis@khlawfirm.com

Marc E. Elias*
Amanda R. Callais*
Alexi M. Velez*
Emily R. Brailey*
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800
Washington, DC 20005
Telephone: (202) 654-6200

melias@perkinscoie.com
acallais@perkinscoie.com
avelez@perkinscoie.com
ebrailey@perkinscoie.com

Kevin J. Hamilton*
Amanda J. Beane*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
khamilton@perkinscoie.com
abeane@perkinscoie.com

Gillian C. Kuhlmann*
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (310) 788-3900
gkuhlmann@perkinscoie.com

Matthew J. Mertens
Georgia Bar No: 870320
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, Oregon 97209
Telephone: (503) 727-2000
mmertens@perkinscoie.com

*Counsel for Proposed Intervenor-Defendant*

*\*Pro Hac Vice Application Pending*

**CERTIFICATE OF SERVICE**

I hereby certify that on the November 13, 2020, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

<u>s/ TODD M. BAIAD</u>
Todd M. Baiad
Georgia Bar No:  031605
One West Park Avenue (31401)
P.O. Box 2139
Savannah, GA 31402-2139
Telephone: (912) 232-7000
Facsimile: (912) 233-0811
tmbaiad@bouhan.com