**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| REBECCA BROOKS, *et al.*, <br><br>          Plaintiffs, <br><br> v. <br><br> THOMAS MAHONEY III, in his official capacity as Chairman of the Chatham County Board of Elections, *et al.*, <br><br>          Defendants. | Civil Action <br> Case No. 4:20-cv-00281-RSB-CLR |

**MOTION TO INTERVENE AND INCORPORATED MEMORANDUM IN SUPPORT BY NON-PARTIES GEORGIA STATE CONFERENCE OF THE NAACP, GEORGIA COALITION FOR THE PEOPLE'S AGENDA, JAMES WOODALL, HELEN BUTLER, AND MELVIN IVEY**

The Georgia State Conference of the NAACP ("Georgia NAACP"), Georgia Coalition for the People's Agenda ("GCPA") (together, the "Organizational Proposed Intervenors"), and James Woodall, Helen Butler, and Melvin Ivey (together, the "Individual Proposed Intervenors," and collectively with the Organizational Proposed Intervenors, "Proposed Intervenors") hereby move to intervene in this case as Defendants as a matter of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, by permissive intervention pursuant to Rule 24(b).

## I.  INTRODUCTION

Plaintiffs have launched an all-out attack on elections in Georgia, baselessly asserting rampant fraud in the midst of a global pandemic.  The relief Plaintiffs seek from this Court is unprecedented, unsupported, and unsupportable:  They want to stop Georgia officials from certifying the results of the 2020 presidential election unless the results from eight counties are excluded – even though those counties account for more than half of the votes in the state.  This

flagrant attempt to disenfranchise millions of eligible Georgia voters has no factual or legal support and must be rejected.

Proposed Intervenors are critical participants in these actions – as of now, they would be the only party in the case representing the interests of individual voters – and are well-situated to defend the right of all Georgia voters to cast their ballots safely during this global pandemic.  The Individual Proposed Intervenors are voters whose votes in the presidential contest will be thrown out if Plaintiffs obtain the relief they seek.   The Organizational Proposed Intervenors are nonpartisan organizations representing the interests of thousands of Georgia members – many of whose votes in the presidential contest would also be thrown out – and dedicated to eliminating barriers to voting and increasing civic engagement among their members and in traditionally disenfranchised communities.

Proposed Intervenors are entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) because: (1) Proposed Intervenors filed this motion without delay; (2) Proposed Intervenors have legally protectable interests in ensuring their lawfully-cast ballots are counted; (3) the relief Plaintiffs seek would harm Proposed Intervenors' interests; and (4) Proposed Intervenors' interests go beyond those of the named Defendants, who have only a generalized public interest in applying Georgia's election code.

Alternatively, Proposed Intervenors should be permitted to intervene under Rule 24(b). Because Proposed Intervenors seek leave to directly challenge Plaintiffs' attempt to discard otherwise valid ballots, their claims and defenses necessarily share common questions of law and fact with the main action.  Furthermore, this action was commenced just three days ago.  Proposed Intervenors' motion would neither delay nor prejudice the orderly adjudication of Plaintiffs' claims.  This motion should be granted to allow Proposed Intervenors to participate so that they

may protect their and their members' right to vote, as well as their own interests in promoting civic participation through voting.

## II.     FACTUAL BACKGROUND

### A.     Plaintiffs Baselessly Seek to Invalidate the Votes of Thousands of Eligible Georgia Voters

Plaintiffs seek to prohibit Defendants from certifying the results of the November 3, 2020 general election unless they exclude each and every vote cast by residents of certain identified counties.  Compl. ¶¶ 64-66.  Relying on a handful of allegations that are alternatingly baseless, inaccurate, unreliable, inadmissible, and irrelevant, Plaintiffs somehow argue that fraud was so rampant in eight Georgia counties – but only in the presidential election – that every one of the more than 1.4 million votes cast in those counties must be discarded.  Those counties account for more than half of all votes cast in the presidential election in Georgia.

Plaintiffs' Complaint makes a litany of unsupported arguments that fail to support this exponentially overbroad and unwarranted remedy.  Plaintiffs' papers mischaracterize the facts and misapprehend the law, and Proposed Intervenors seek to intervene in this action to protect the interests of voters whose legitimate ballots are under attack and to provide the perspective of Georgia organizations whose missions are to facilitate full and fair participation in the electoral process.  Proposed Intervenors have at least as much of an interest in the outcome of this ligation as Defendants.

### B.     The Georgia NAACP and GCPA are Organizations That Promote the Interests of Voters

The Organizational Defendant Intervenors are nonpartisan organizations that represent thousands of Georgians who reside in Augusta-Richmond, Chatham, Clayton, Cobb, DeKalb, Fulton, Gwinnett, and Henry Counties, many of whom are now at risk of being unlawfully deprived

of their right to vote.  Both organizations are dedicated to eliminating barriers to voting and increasing civic engagement among their members and in traditionally disenfranchised communities.  They expend substantial resources on voter education and turnout efforts; for this election, those efforts have included providing accurate information to voters on how to cast mail-in and absentee ballots to ensure that voters have a full and fair opportunity to participate in spite of the unprecedented circumstance of the election taking place during a global pandemic.

The Georgia State Conference of the NAACP is a non-profit advocacy group for civil rights for Black Americans that has approximately 10,000 members.  **Exhibit 1**, Declaration of James Woodall ¶¶ 5-6, 8.  The Georgia NAACP has active branches in Augusta-Richmond, Chatham, Clayton, Cobb, DeKalb, Fulton, Gwinnett, and Henry Counties and engages in voter registration, education, turnout, and voter assistance efforts in those counties.  *Id.* ¶¶ 7-9.  The Georgia NAACP has been working to ensure that Black voters in Georgia are educated on different voting methods, including mail-in and absentee voting, during the COVID-19 pandemic, and has conducted phone-banking to assist Georgia voters.  *Id.* ¶¶ 10-12, 15.  The Georgia NAACP also has members, including President James Woodall, who cast votes in the presidential election in Augusta-Richmond, Chatham, Clayton, Cobb, DeKalb, Fulton, Gwinnett, and Henry Counties.  *Id.* ¶¶ 16-18.  These members are at risk of being disenfranchised election if the presidential election results in Augusta-Richmond, Chatham, Clayton, Cobb, DeKalb, Fulton, Gwinnett, and Henry Counties are invalidated.  *Id.* ¶¶ 19-20.

The Georgia Coalition for the People's Agenda ("GCPA"), a coalition of more than 30 organizations, which collectively have more than 5,000 individual members, similarly encourages voter registration and participation, particularly among African-American and other underrepresented communities.  *See* **Exhibit 2**, Declaration of Helen Butler ¶¶ 4-5.  The GCPA's

support of voting rights is central to its mission.  *Id.* ¶ 5.  The organization regularly commits its time and resources to conducting voter registration drives, voter education, voter ID assistance, "Souls to the Polls" operations, and other get-out-the-vote operations in the Metro Atlanta area and in Athens, Albany, Macon, Savannah, and LaGrange.  *Id.* ¶¶ 5-6.  For the November 2020 election, the GCPA participated in media interviews, sponsored Public Service Announcements (PSAs), placed billboard ads, conducted phone banking, and engaged in text message campaigns to educate voters and to encourage participation in the 2020 election cycle.  *Id.* ¶ 10.  All of those efforts would be thwarted, forcing the GCPA to divert additional resources, if the presidential election results in Augusta-Richmond, Chatham, Clayton, Cobb, DeKalb, Fulton, Gwinnett, and Henry Counties are invalidated.  *Id.* ¶¶ 14-15.

Individual Proposed Defendant Intervenors James Woodall, Helen Butler, and Rev. Melvin Ivey are Georgia voters who are registered to vote in Fulton, Morgan, and Augusta-Richmond Counties, respectively.  Woodall Decl. ¶ 18; Butler Decl. ¶¶ 11-12; **Exhibit 3**, Declaration of Melvin Ivey ¶ 5.  All three of them voted in the November 2020 presidential election contest. Woodall Decl. ¶ 19; Butler Decl. ¶ 11; Ivey Decl. ¶¶ 8-9.  They voted by different means; President Woodall cast his vote in person at State Farm Arena during the early voting period, while Rev. Ivey voted by mail because he is over 65 years old and was concerned about the risk of contracting COVID-19 if he voted in person.  Woodall Decl. ¶ 17; Ivey Decl. ¶¶ 6-7.  Because they live in counties targeted by Plaintiffs in this case, the votes of President Woodall and Rev. Ivey in the November 2020 presidential contest would be invalidated if the Plaintiffs prevail in this case. Woodall Decl. ¶ 17; Ivey Decl. ¶¶ 6-7.  Moreover, if the Plaintiffs succeed in preventing the certification of the November 2020 election, Ms. Butler's vote would be effectively invalidated as well even though she does not reside in one of those counties.  Butler Decl. ¶ 12.

### III.    PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT

Proposed Intervenors satisfy the criteria to intervene as of right under Federal Rule of Civil Procedure 24(a).  "Parties seeking to intervene under Rule 24(a)(2) must show that:  (1) [their] application to intervene is timely; (2) [they have] an interest relating to the property or transaction which is the subject of the action; (3) [they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest; and (4) [their] interest is represented inadequately by the existing parties to the suit."  *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695-96 (11th Cir. 2017) (alterations in original) (quoting *Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004)).  Proposed Intervenors meet each of these requirements.

#### A.  The Motion to Intervene is Timely

This motion, which is being filed three days after Plaintiffs initiated this action, is undoubtedly timely.  "Courts consider four factors in assessing timeliness: (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest; (3) the extent of the prejudice that the would-be intervenor may suffer if denied the opportunity to intervene; and (4) the existence of unusual circumstances weighing for or against a determination of timeliness."  *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019) (citing *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017)).

These factors militate in Proposed Intervenors' favor here.  Proposed Intervenors learned of this litigation shortly after its filing and are submitting this motion three days later.  Existing

parties therefore cannot plausibly claim any prejudice due to delay.  Further, Proposed Intervenors would suffer prejudice if denied the opportunity to intervene, as described *infra*.  Importantly, however, "when the proposed intervenor seeks intervention of right," the question "whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene . . . may well be the only significant consideration."  *Id.* (quoting *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970)).  No existing party to the litigation is so harmed or prejudiced here because Proposed Intervenors have not delayed in moving to intervene. Finally, there are no unusual circumstances in this matter that bear on timeliness of intervention. Accordingly, Proposed Intervenors' motion is timely.

### B.  Proposed Intervenors Have Sufficient Interests in this Litigation

Proposed Intervenors' have a sufficient interest in the subject of this litigation.  "Under Rule 24(a)(2), a party is entitled to intervention as a matter of right if the party's interest in the subject matter of the litigation is direct, substantial and legally protectable."  *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc*., 425 F.3d 1308, 1311 (11th Cir. 2005) (quoting *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002)).  "In deciding whether a party has a protectable interest . . .  courts must be 'flexible' and must "focus[ ] on the particular facts and circumstances' of the case."  *Huff v. Comm'r of IRS*, 743 F.3d 790, 796 (11th Cir. 2014) (second alteration in original) (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)).

The interest of the individual Proposed Intervenors is plain: voters who cast ballots in the 2020 election have a significantly protectable interest in ensuring their ballots are counted and not discarded.  *See League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434-35 (5th Cir. 2011) (finding a legally protectable interest where the intervenor sought to protect his right to vote); *see also Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1176 (11th Cir.

2008) (declaring that the right to vote is a fundamental matter in a free and democratic society); *Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684, 694-95 (W.D. Pa. 2003) ("The right of qualified electors to vote . . . is recognized as a fundamental right, . . . extend[ing] to all phases of the voting process, [and applying] equally to the initial allocation of the franchise as well as the manner of its exercise."); *cf. Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1307 (N.D. Ga. 2018) (finding intervention as of right appropriate where individual voter intervenors would be potentially disenfranchised by the requested relief).

Likewise, the Organizational Proposed Intervenors have an interest in protecting one of their core missions – ensuring that their members, and all Georgians, are given a full and equal opportunity to exercise their fundamental right to vote – which they have dedicated considerable effort to advancing. The Organizational Proposed Intervenors are committed to eliminating barriers to voting and increasing civic engagement. In pursuit of that mission, the organizations engage in robust voter registration, voter education, and get-out-the-vote activities, expending considerable resources towards ensuring that eligible voters in Georgia can exercise their right to vote. Discarding ballots that have been lawfully cast would undermine their voter-advocacy efforts by leading some voters to believe that voting is pointless because their ballots will not be counted, thwarting the organizations' efforts. *See, e.g.*, Woodall Decl. ¶ 23. The frustration of these core voter enfranchisement missions gives the Organizational Proposed Intervenors a significantly protectable interest in this litigation. *See, e.g.*, *Common Cause Ind. v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019) ("[A] voting law can injure an organization enough to give it standing by compelling [it] to devote resources to combatting the effects of that law that are harmful to the organization's mission."); *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla.

Sept. 20, 2016) (finding a labor union had a sufficient interest in ensuring that a county's voter roll maintenance activities complied with federal law).

The Organizational Proposed Intervenors also have an interest in ensuring that legally cast ballots are not discarded because it would force the Organizational Proposed Intervenors to divert resources from other priorities to educate members and other voters of their rights and the severe restrictions on voting that Plaintiffs seek to impose.  *See, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610-12 (5th Cir. 2017) (finding standing where an organization was required to dedicate additional resources to assisting voters navigate the polls); *Browning,* 522 F.3d at 1164-65; *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008); *Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020). If Plaintiffs were to obtain the relief they seek, the Organizational Proposed Intervenors would be forced to commit resources immediately to respond to questions from members and voters about the status of their lawfully cast ballots in this election.   In addition, the diversion of the organizations' resources would continue into future years, as they would need to dedicate larger portions of their staff and monetary resources toward ensuring that members' votes are not rejected.  These efforts will come at the expense of other organizational priorities.

Finally, courts routinely find that public interest organizations, like the Organizational Proposed Intervenors, should be granted intervention in voting and other election-related cases, demonstrating the significantly protectable interests such organizations have in the electoral process.  *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111 (D.C. Cir. 2015) (allowing intervention by civil rights advocacy groups); *Pub. Interest Legal Found., Inc. v. Winfrey*, No. 19-13638, 2020 WL 2781826, at *2 (E. D. Mich. May 28, 2020) (allowing voting rights organizations to intervene as defendants); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013

WL 6511874 (D. Kan. Dec. 12, 2013) (allowing non-profits and nonpartisan advocacy groups to intervene); *LaRoque v. Holder*, No. 1:10-cv-00561 (D.D.C. Aug. 25, 2010), (Doc. 24) (permitting intervention by civil rights organization).  This case is no exception.

### C.  Disposition of this Case May Impair Proposed Intervenors' Interests

Proposed Intervenors also satisfy the third prong of the intervention analysis because "the disposition of the action, as a practical matter, may impede or impair [their] ability to protect" their interests.  *Tech. Training Assocs., Inc.*, 874 F.3d at 695-96.  Proposed Intervenors need not show that their interests "will" be impaired by disposition of the ligation; only that they "may" be.  *See Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014).  Indeed, the "very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions."  *Id.* at 345; *see U.S. Army Corps of Eng'rs*, 302 F.3d at 1253 (finding it sufficient that disposition of the action "could" impair the proposed intervenors' interest).

The Individual Proposed Intervenors, the members of the Organizational Proposed Intervenors, and more than a million other Georgia voters will be stripped of their fundamental right to vote in the 2020 presidential contest if the Plaintiffs prevail.  It is thus self-evident that Proposed Intervenors' interests will be impacted by the disposition of this case.  The Individual Proposed Intervenors could have their lawfully cast votes tossed out, while the Organizational Proposed Intervenors are at risk of losing their ability to protect their interests and those of their members in voter participation.

These concerns of voter disenfranchisement are amplified with respect to the underrepresented minority communities that the Organizational Proposed Intervenors serve.  "Historically. . . throughout the country, voter registration and election practices have interfered

with the ability of minority, low-income, and other traditionally disenfranchised communities to participate in democracy." *Ind. State Conf. of NAACP v. Lawson*, 326 F. Supp. 3d 646, 650 (S.D. Ind. 2018), *aff'd*, 937 F.3d 944 (7th Cir. 2019).  The Organizational Proposed Intervenors have worked to remedy those practices, in part, by ensuring that their registration, education, and get-out-the-vote efforts reach vulnerable or underserved minority communities.  Thus, the Organizational Proposed Intervenors have significant interests in ensuring that Plaintiffs' proposed relief does not harm those communities.

### D.  The Interests of Existing Defendants May Diverge from Those of Applicants

Applicants also meet the "minimal" burden of demonstrating that the existing parties in the litigation may not protect their interests. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see Clark v. Putnam Cty.*, 168 F.3d 458, 461 (11th Cir. 1999).  While there is a "weak" presumption that representation is adequate when proposed intervenors seek the same objectives as existing parties, that presumption "merely imposes upon the proposed interveners the burden of coming forward with some evidence to the contrary."  *Clark*, 168 F.3d at 461; *see also Tech. Training Assocs., Inc.*, 874 F.3d at 697 (citing *Clark*, 168 F.3d at 461).  That threshold is easily met here; the Eleventh Circuit has recognized that defendants who are elected officials and administer elections have divergent interests from intervening voters and voting rights organizations because they represent the interests of all voting citizens and have an interest in "remain[ing] popular and effective leaders."  *Clark*, 168 F.3d at 461–62 (alteration in original) (quoting *Meek v. Metro. Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007)).  This principle squarely applies here; Defendants Kemp and Raffensperger are elected officials who have responsibilities related to the administration of elections.  *See* Complaint, Doc. 1 ¶¶ 20-21.

The divergence of interests is particularly stark and demonstrable here because the Organizational Proposed Intervenors have repeatedly brought suit to challenge actions taken by these same Defendants or their predecessors in office on the basis that they denied the fundamental right to vote or otherwise harmed voters in violation of federal law. *See, e.g.*, *Ga. Coal. for the People's Agenda v. Deal*, No. 4:16-cv-00269-WTM (S.D. Ga.) (Moore, J.) (successful suit brought against then-Secretary of State Kemp to extend voter registration deadline in the aftermath of Hurricane Matthew); *Ga. State Conf. of the NAACP v. DeKalb Cty. Bd. of Registration and Elections*, No. 1:20-cv-879-ELR (N.D. Ga.) (Ross, J.) (bringing suit against the individual members of the DeKalb County Board of Registration and Elections alleging that they purged eligible voters in violation of the National Voter Registration Act; *Ga. State Conf. of the NAACP v. Kemp*, No. 2:16-cv-219-WCO (N.D. Ga.) (O'Kelley, J.) (bringing suit against then-Secretary Kemp alleging that he administratively adopted an "exact match" program that illegally removed eligible voters from the rolls); *Ga. Coal. for the People's Agenda v. Raffensperger*, No. 1:18-cv-4727-ELR (N.D. Ga.) (Ross, J.) (similar suit first brought against then-Secretary Kemp and continuing against Secretary Raffensperger); *Martin v. Raffensperger*, No. 1:18-cv-4776-LMM (N.D. Ga.) (May, J.) (GCPA is a plaintiff in successful absentee ballot suit against individual members of the Gwinnett County Board of Registration and Elections and the Georgia Secretary of State); *Ga. State Conf. of the NAACP v. State of Georgia*, No. 1:17-cv-1397-TCB (N.D. Ga.) (Batten, J.) (successful National Voter Registration Act lawsuit brought against the Georgia Secretary of State).

In any event, while Defendants may have a generalized interest in upholding the law, they do not have a direct interest in protecting the validity of their own votes, as the Individual Proposed Intervenors and the Organizational Proposed Intervenors' members do, nor in ensuring the broad

voter access that is fundamental to the mission of the Organizational Proposed Intervenors. Their right to vote – or more precisely, their right to have counted the votes they have already lawfully cast – is at risk. *See Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-4095- EFM-DJW, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (finding that applicants who had shown their interests in increasing participation in the democratic process and/or protecting voter rights, particularly in minority and underprivileged communities, may have private interests that diverge from the public interest of the defendant Election Assistance Commission); *see also, e.g.*, *Meek*, 985 F.2d at 1478 ("The intervenors sought to advance their own interests in achieving the greatest possible participation in the political process. Dade County, on the other hand, was required to balance a range of interests likely to diverge from those of the intervenors."). Proposed Intervenors' interests therefore sufficiently diverge from the existing parties to satisfy Rule 24(a)(2).

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

Even if the Court determines that Applicants are not entitled to intervene as a matter of right, the Court should exercise its broad discretion to grant permissive intervention. Permissive intervention may be proper even if a district court denies intervention as of right. *See Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996) (citing *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 595 (11th Cir. 1991) (per curiam)). "Permissive intervention under Fed. R. Civ. Proc. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *U.S. Army Corps of Eng'rs*, 302 F.3d at 1261 (citing *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1365 (11th Cir. 1984)). The decision whether to

grant permissive intervention is "wholly discretionary with the court." *Purcell*, 85 F.3d at 1508 (citing *Worlds*, 929 F.2d at 595).

Proposed Intervenors meet the requirements for permissive intervention here. First, Proposed Intervenors seek to assert defenses that squarely address the factual and legal premises of Plaintiffs' claims, including but not limited to: (1) whether any of the scattered factual allegations of voting irregularities that Plaintiffs cite have any bearing on the integrity of the election in the counties where Individual Proposed Intervenors Woodall and Ivey and the members of the Organizational Proposed Intervenors live and voted; (2) whether the Individual Proposed Intervenors' votes and the votes cast by the Organizational Proposed Intervenors' members in the November 2020 presidential contest must be invalidated; and (3) whether any of Plaintiffs' allegations, even if proven, would require the drastic and unprecedented remedy they seek.

Second, granting Proposed Intervenors' motion at this early stage of the case would not delay or prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b). By contrast, refusing to permit intervention would deprive Proposed Intervenors of the chance to defend their significant and protectable interests in the litigation. Importantly, permissive intervention is especially appropriate where, as here, the proposed intervenors may meaningfully contribute to the proper development of the factual or legal issues in dispute. *See Nat'l Wildlife Fed'n v. Ruckelshaus*, 99 F.R.D. 558, 561 (D.N.J. 1983).

Proposed Intervenors expect to present perspectives on key legal and factual issues that differ from those of Defendants and the other parties in this case – namely, the perspective of individual voters whose ballots Plaintiffs seek to invalidate, and of organizations with deep experience educating, registering, and assisting voters in Georgia counties and constituent communities. Organizational Proposed Intervenors and their affiliates in sister states, as well as

their counsel, have litigated numerous voting rights cases and have substantial experience analysing claims of the kind asserted here and the methodologies that support them.  Indeed, the NAACP was recently permitted to intervene in a similar case in Pennsylvania.  *See Donald J. Trump For President, Inc. v. Boockvar*, No. 4:20-cv-2078, Doc. 72 at 2 (M.D. Pa. Nov. 12, 2020) (holding that the NAACP and other organizations and voters "satisfy the requirements for permissive intervention under Fed. R. Civ. P. 24(b)").

## V.   CONCLUSION

For the reasons stated above, the Court should permit Proposed Intervenors' intervention and allow them to submit a responsive pleading on the same schedule as defendants.

Respectfully submitted this 14th day of November, 2020.

> /s/ Philip Sandick
> Derin Dickerson (*pro hac vice* application forthcoming)
> Georgia Bar No. 220620
> derin.dickerson@alston.com
> Jahnisa Loadholt  (*pro hac vice* application forthcoming)
> Georgia Bar No. 940679
> jahnisa.loadholt@alston.com
> Gavin Reinke (*pro hac vice* application forthcoming)
> Georgia Bar No. 159424
> gavin.reinke@alston.com
> Philip Sandick
> Georgia Bar No. 217486
> phil.sandick@alston.com
> Kristi Ramsay (*pro hac vice* application forthcoming)
> Georgia Bar No. 964749
> kristi.ramsay@alston.com
> **ALSTON & BIRD LLP**
> 1201 West Peachtree Street
> Atlanta, Georgia 30309
> Telephone: (404) 881-7000
> Facsimile: (404) 881-7777

*/s/ Jon M. Greenbaum*
Kristen Clarke (*pro hac vice* application forthcoming)
kclarke@lawyerscommittee.org
Jon M. Greenbaum (*pro hac vice* application forthcoming)
jgreenbaum@lawyerscommittee.org
Ezra D. Rosenberg (*pro hac vice* application forthcoming)
erosenberg@lawyerscommittee.org
Julie M. Houk (*pro hac vice* application forthcoming)
jhouk@lawyerscommittee.org
John Powers* (*pro hac vice* application forthcoming)
jpowers@lawyerscommittee.org
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW**
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8300


*/s/ William V. Custer*
William V. Custer
Georgia Bar No. 202910
bill.custer@bclplaw.com
Jennifer B. Dempsey (*pro hac vice* application
forthcoming)
Georgia Bar No. 217536
jennifer.dempsey@bclplaw.com
Christian J. Bromley (*pro hac vice* application
forthcoming)
Georgia Bar No. 206633
christian.bromley@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Atlantic Center | Fourteenth Floor
1201 W. Peachtree Street, N.W.
Atlanta, Georgia  30309
Telephone: (404) 572-6600
Facsimile: (404) 572-6999

*Attorneys for Proposed Defendant-Intervenors*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

/s/  Philip Sandick
Philip Sandick
Georgia Bar No. 217486
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
phil.sandick@alston.com

*Attorney for Proposed Defendant-Intervenors*
*Georgia State Conference of the NAACP,*
*Georgia Coalition for the People's Agenda,*
*James Woodall, Helen Butler, and Melvin Ivey*