# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| REBECCA BROOKS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS MAHONEY III, in his official capacity as Chairman of the Chatham County Board of Elections, *et al.*, <br><br> Defendants. | Civil Action <br> Case No. 4:20-cv-00281-RSB-CLR |

## [PROPOSED] MOTION TO DISMISS BY PROPOSED DEFENDANT INTERVENORS GEORGIA STATE CONFERENCE OF THE NAACP, GEORGIA COALITION FOR THE PEOPLE'S AGENDA, JAMES WOODALL, HELEN BUTLER, AND MELVIN IVEY

## INTRODUCTION

This case seeks unprecedented and unconscionable relief: the rejection of the majority of votes cast by voters of color in Georgia.  One would think that Plaintiffs would approach this Court warily when seeking such extraordinary relief, although it is difficult to imagine what evidence could ever be mustered in support of such a claim. But this discretion does not appear to be in Plaintiffs' arsenal.  Instead, they stride into court without pleading a scintilla of plausible facts to support their claim for outlandish relief.

The proposed Defendant Intervenors are organizations whose 15,000 members' votes are in jeopardy and three voters whose votes are being threatened by Plaintiffs.  Granting Plaintiffs relief will not cure any constitutional infirmities; it will create them: the disenfranchisement of hundreds of thousands of votes legitimately cast by eligible voters. Proposed Intervenors therefore respectfully urge this Court to read the Complaint carefully, and note the utter absence of

1

averments to support Plaintiffs' broad claim, specifically, that: (1) there are only ten paragraphs containing factual averments supposedly supportive of Plaintiffs' claims (Paragraphs 34-43); (2) five of those paragraphs make allegations relating to a total of six voters, most of whom did not even vote in the counties Plaintiffs have sued; (3) two paragraphs make allegations based on hearsay "studies" that have nothing to do with the 2020 election – and are facially implausible; (4) one paragraph makes allegations based on facts from September 2020, which, even if actionable – and they are not – are barred by laches; (5) one paragraph is specifically contradicted by the authority cited in the paragraph; and (6) the only other paragraph notes that the Secretary of State has ordered a recount, which does not give rise to a claim.  No court has ever granted relief of the nature and scope requested by Plaintiffs under any set of facts – let alone in the context of the paucity of actionable averments in this Complaint.

This Motion will not repeat the many prudent grounds for dismissal explained by others. It offers the perspective of voters – particularly voters of color – and offers additional fundamental reasons why this Court should not discard millions of votes.  The Georgia State Conference of the NAACP, Georgia Coalition for the People's Agenda, and James Woodall, Helen Butler, and Melvin Ivey ("Proposed Intervenors") hereby move to dismiss Plaintiffs' Complaint for failure to state a claim and on laches grounds.  Proposed Intervenors also expressly adopt and incorporate herein the legal arguments set forth in Proposed Intervenor Democratic Party of Georgia's Motion to Dismiss.  *See* Proposed Motion to Dismiss by Democratic Party of Georgia, Doc. 15.

## PROCEDURAL HISTORY

Eight days after the November 3, 2020 General Election, Plaintiffs filed this action seeking "emergency relief."  Complaint, Doc. 1 ¶¶ 1-2.  Plaintiffs allege that "sufficient illegal ballots were included in the results to change or place in doubt the November 3 presidential-election result,"

causing "valid, legal votes" to be "unconstitutionally diluted by illegal votes." *Id*. ¶ 53. Plaintiffs ask the Court to require Defendants certify presidential election results that "exclud[e] the presidential-election results from the identified counties." *Id*. ¶ 66.

## ARGUMENT

### I.     Plaintiffs Fail to Plausibly Allege a Constitutional Violation

Plaintiffs' claims on their face fail to plausibly allege a constitutional violation and therefore cannot survive a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court need not accept unwarranted factual inferences or legal conclusions as true, "[n]or does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances alleging fraud or mistake." Fed. R. Civ. P. 9(b); *see also Wilding v. DNC Servs. Corp*., 941 F.3d 1116, 1127 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2828 (2020). Regardless of whether the Court applies the standard of Rule 8 or Rule 9(b), however, a review of Paragraphs 34 through 43, which contain the only substantive factual allegations of harm in the Complaint, demonstrates that Plaintiffs have not met their burden.

- Paragraph 34 includes allegations about voting machine-related issues in Spalding and Morgan Counties. This paragraph is irrelevant to Plaintiffs' claims because the Plaintiffs do not assert that Spalding or Morgan Counties' presidential results are infirm and Plaintiffs do not contest the results in those counties. This paragraph therefore does not support any legal claim in the complaint.

- Paragraph 35 alleges that one voter was told that an absentee ballot was requested and submitted in his name. This voter, however, acknowledges that he was able to vote in person successfully and does not allege that a fraudulent vote was actually cast on his behalf. This paragraph therefore does not support any legal claim in the complaint.

- Paragraph 36 includes allegations related to one voter in Armuchee, Georgia, which is located in Floyd and Chattooga Counties. This paragraph is irrelevant to Plaintiffs' claims because the Plaintiffs do not assert that Floyd or Chattooga Counties' presidential results

3

are infirm and Plaintiffs do not contest the results in those counties. This paragraph therefore does not support any legal claim in the complaint.

- Paragraph 37 includes allegations related to one military voter whose county of residence is not indicated. This paragraph is irrelevant to Plaintiffs' claims because Plaintiffs do not allege that the voter resides in Augusta-Richmond, Chatham, Clayton, Cobb, DeKalb, Fulton, Gwinnett, and Henry Counties, which are the only counties where Plaintiffs contest the presidential election results. This paragraph therefore does not support any legal claim in the complaint.

- Paragraph 38 includes allegations about a voter in Rockdale County and her mother, whose county of residence is not indicated. This paragraph is irrelevant to Plaintiffs' claims because Plaintiffs do not allege that the voter or her mother reside in Augusta-Richmond, Chatham, Clayton, Cobb, DeKalb, Fulton, Gwinnett, and Henry Counties, the only counties where Plaintiffs contest the presidential election results. This paragraph therefore does not support any legal claim in the Complaint.

- Paragraph 39 includes an allegation regarding the counting of ballots by Fulton County officials at State Farm Arena on Election Night. The Plaintiffs do not allege any violation of state or federal law or the Constitution as a result of the counting of these ballots. This paragraph therefore does not support any legal claim in the Complaint.

- Paragraph 40 alleges that Judicial Watch conducted a study in September 2020 indicating that several counties in Georgia have voter registration lists that exceed 100% of the eligible voters in that county. Most of the counties listed in Paragraph 40 – Bryan, Forsyth, Dawson, Oconee, Fayette, Cherokee, Jackson, Lee, Morgan, Greene, Effingham, Walton, Rockdale, Barrow, and Douglas Counties – are not counties where Plaintiffs claim the presidential-election results are inaccurate. Paragraph 40 therefore undermines Plaintiffs' claim that the proper relief for this alleged violation, even if true, would be to strike the presidential election results in Augusta-Richmond, Chatham, Clayton, Cobb, DeKalb, Fulton, Gwinnett, and Henry Counties, particularly given that Augusta-Richmond and Chatham Counties are not among the counties identified in Paragraph 40. Beyond this, as discussed below, even if these facts were true and somehow supportive of any legal claim, on its face, Plaintiffs were aware of these facts since September, and they are barred by laches from pressing this claim now.

- Paragraph 41 alleges that Just Facts "conducted a study" and "arrive[d] at an estimate that as many as 73,795 votes were cast for Joe Biden in Georgia by non-citizens." The Just Facts article linked to in Paragraph 41 does not plausibly allege fraud in the November 2020 election because it takes survey data of non-citizens who reported voting in the 2008 election and their alleged partisan breakdown. Extrapolating unvetted 2008 survey data to turnout rates in the November 2020 election does not create a plausible inference that any illegal voting took place in the November 2020 election. It does not prove that any voter voted illegally in 2008 or 2012, let alone voted illegally in Georgia in 2020. Moreover, it does not contain any facts that were not known to Plaintiffs before the 2020 election and

4

is, therefore, barred by laches as explained below. This paragraph therefore does not support any legal claim in the Complaint.

- Paragraph 42 alleges that the Secretary of State has ordered that all of Georgia's 159 counties conduct a hand recount and audit of the presidential election. Plaintiffs do not allege this fact gives rise to a constitutional violation. This paragraph therefore does not support any legal claim in the Complaint.

   Paragraph 43 alleges that "among ballots that only voted for President and no other races, Joe Biden won more than 99% of those ballots (Biden: 95,801 to Trump: 818)." However, the National Pulse article does not say that. It states that Biden received 95,801 votes over the Democratic Senate candidates, while Trump received 818 more votes than Republican senate candidates. That result could have been achieved in a variety of ways; for example, voters could have split the ticket (voting for Biden and for a Republican Senate candidate), or additional voters could have voted a Trump-only ticket while additional voters decided against voting in the presidential contest. Plaintiffs' proposed reading of the article is implausible, and, even if true, would not demonstrate the constitutional violation. This paragraph therefore does not support any legal claim in the Complaint.

To describe these allegations as implausible in the context of Plaintiffs' legal claim is to be charitable. The allegations, taken individually and together, are (1) *de minimis*, to the extent that they seek to void hundreds of thousands of votes on the basis of a handful of anecdotes; (2) irrelevant, as most of the allegations have either nothing to do with the counties sued or with Plaintiffs' legal claim; (3) out-of-time; (4) self-contradictory; and (5) downright fanciful, speculative, and nonsensical. Because Plaintiffs fail to plausibly allege a claim upon which relief can be granted, the Court must dismiss this lawsuit. *See Twombly*, 550 U.S. at 570.

**II.      Plaintiffs' Requested Relief Is Unavailable as a Matter of Law**

It is difficult to approach the issue of remedy without appearing to dignify the paucity of plausible averments of liability. However, even if Plaintiffs could survive a facial attack on their liability allegations, the remedy they seek is barred as a matter of law. No court has ever granted the sort of relief sought by Plaintiffs under any circumstances, let alone those averred in the Complaint. This is a classic case in which "the cure [is] worse than the alleged disease, at least

insofar as the professed concern is with the right of voters to cast effective ballots in a fair election." *Baber v. Dunlap*, 349 F. Supp. 3d 68, 76 (D. Me. 2018).

### A. Plaintiffs' Requested Relief Would Defy Well-Established Federal and Georgia Law

Even if Plaintiffs' allegations could support a finding of some sort of errors in election administration, tossing out millions of votes in the presidential election is at odds with centuries of law. Courts have refused to "believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down an unrealistic requirement that elections be free of any error." *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970). The law in the Eleventh Circuit is in accord. A finding that "the election process itself reaches the point of patent and fundamental unfairness … must go well beyond the ordinary dispute over the counting and marking of ballots." *Duncan v. Poythress*, 657 F.2d 691, 703 (5th Cir. Unit B 1981) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978)). The Eleventh Circuit has observed that "[i]n most cases, irregularities in state elections are properly addressed at the state level, whether through state courts or review by state election officials." *Burton v. State of Ga.*, 953 F.2d 1266, 1268 (11th Cir. 1992) (observing that "[t]he state's political process affords another avenue for redress of grievances"). Only the most egregious elections misconduct could even conceivably justify the sort of mass disenfranchisement Plaintiffs seek. *See McMichael v. Napa County*, 709 F.2d 1268, 1273–94 (9th Cir. 1983) (Kennedy, J., concurring) (invalidation of election results "has been reserved for instances of willful or severe violations of established constitutional norms").

The Georgia Supreme Court has similarly stated that "[i]t is not sufficient to show irregularities which simply erode confidence in the outcome of the election. Elections cannot be overturned on the basis of mere speculation." *Meade v. Williamson*, 745 S.E.2d 279, 285 (Ga. 2013) (quoting *Middleton v. Smith*, 539 S.E.2d 163 (Ga. 2000)). In this vein, that Court has held

6

in a case where Atlanta voters registered to vote at locations that were not authorized by state law and voted in the 1981 Atlanta mayoral election, "the remedy of disenfranchisement of voters registered in violation of the statute is so severe as to be unpalatable where the good faith of the registrars is not disputed." *Malone v. Tison*, 282 S.E.2d 84, 89 (Ga. 1981).  Indeed, even if county boards somehow erred in their conduct of the November 2020 election, and could have been enjoined from doing so had a suit been timely filed, nowhere does the Complaint allege that *voters* did anything wrong in taking action to correct their innocent mistakes and cast valid votes. *See Holton v. Hollingsworth*, 514 S.E.2d 6, 8-9 (Ga. 1999) (holding "Mr. Benton's vote was properly counted" even though he received assistance from someone who was neither a relative nor qualified to vote in violation of state law because the election manager approved the assistance and "the officer's blunder will not disenfranchise the voter" absent a statutory mandate to the contrary).

Plaintiffs, however, do not identify any concrete examples of such misconduct in this case. As a matter of law, Plaintiffs' Complaint, which does not allege any concrete or specific instances of fraud, systemic or otherwise, in this election, cannot support the extreme relief requested.  And far from curing any constitutional violation, Plaintiffs' requested injunction would *create* grave constitutional violations by invalidating the legal and valid votes of millions of Georgia citizens.

> **B.     Plaintiffs' Requested Relief Would Itself Violate Voters' Constitutional Rights by Arbitrarily Disenfranchising Voters, Including Voters of Color**

Plaintiffs' prayer for relief leads with the shocking request that this Court prohibit Defendants from certifying the 2020 presidential election contest unless the results from eight counties are excluded.  Compl., ¶¶ 64-66.  In seeking this relief, Plaintiffs invite the Court to force Georgia to select its presidential electors without accounting for votes cast by more than half of the state's citizenry.  Such an order would obviously violate the Constitution.

"When the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental." *Bush v. Gore*, 531 U.S. 98, 104 (2000) (per curiam). The right to vote includes "the right of qualified voters within a state to cast their ballots and have them counted." *United States v. Classic*, 313 U.S. 299, 315 (1941). Requiring Georgia to exclude the votes of voters in Augusta-Richmond, Chatham, Clayton, Cobb, DeKalb, Fulton, Gwinnett, and Henry Counties before certifying the presidential election would disenfranchise every Georgian who voted in that contest, and therefore would violate rights safeguarded by the Fourteenth Amendment's Due Process Clause. *Bush v. Gore*, 531 U.S. at 110. Plaintiffs ask the Court to disenfranchise millions of Georgia voters—none of whom is alleged to be ineligible to vote or alleged to have engaged in any misconduct—based on nothing more than conjecture and baseless speculation and innuendo. The Fourteenth Amendment does not permit the Government to nullify the fundamental right to vote on such an arbitrary basis.

Plaintiffs' proposed remedy would create an enormous Equal Protection violation. Plaintiffs ask the Court to arbitrarily count or discard votes solely on the basis of where the voter lives: Plaintiffs raise problems with voting machines in Spalding and Morgan Counties, *see* Compl. ¶ 34, and hearsay regarding a voter who lives in Armuchee (in Floyd and Chattooga Counties), *id*. ¶ 36, but they do not seek to seek to invalidate the votes cast in those counties. *Id*. ¶¶ 24-31 (identifying Augusta-Richmond, Chatham, Clayton, Cobb, DeKalb, Fulton, Gwinnett, and Henry Counties). This would create unconstitutional disparities between the treatment of voters who live in the targeted counties and those who live elsewhere. *See Bush v. Gore*, 531 U.S. at 104–05.

Moreover, though Plaintiffs ask the Court to exclude the results of only eight of Georgia's 159 counties, Plaintiffs' requested relief would have a tremendous impact on registered Georgia voters who are persons of color. According to the Georgia Secretary of State's November 1, 2020

registered voter data, there are a total of 1,570,099 registered voters of color in the eight counties that Plaintiffs' ask this Court to exclude from Georgia's election results.[1] *See* https://sos.ga.gov/admin/uploads/Active_Voters_by_Race_Gender_as_of_November_1_2020.xlsx (last visited Nov. 14, 2020). All of these individuals would be disenfranchised if the relief sought in the Complaint is granted.

While this absolute number is shocking, the picture is even more dire when the number of votes that Plaintiff seeks to exclude are viewed in proportion to the total number of registered voters of color in Georgia as a whole. The 1,570,099 registered voters of color in these eight counties represent 59.44 percent of all registered voters of color in Georgia. *See id.* (indicating that there are 2,641,366 American Indian or Alaskan Native, Asian or Pacific Islander, Black Not of Hispanic Origin, and Hispanic voters registered in Georgia). Thus, Plaintiffs ask the Court to order the unprecedented remedy of excluding ***a majority*** of all of the votes of persons of color in the State. Plaintiffs' utter lack of evidence of any voter fraud or other irregularities in Georgia's presidential election does not justify the wholesale exclusion of a wide swath of minority votes.

## III.   The Doctrine of Laches Bars Plaintiffs' After-the-Fact Attempt to Invalidate the Election

As discussed above, in paragraphs 40 and 41 of the Complaint, Plaintiffs allege that a September 2020 "study" showed that certain Georgia counties (not all of which are sued by Plaintiffs) had more registered voters than eligible voters and that another "study" showed that 16% of voters in elections in certain states in 2008 and 2016 were allegedly undocumented citizens,

---

[1] On a motion to dismiss, the Court may take judicial notice of voter registration statistics and other publicly available material on government websites. *See City of L.A. v. Cty. of Kern*, 509 F. Supp. 2d 865, 876 n.7 (C.D. Cal. 2007) (taking judicial notice of county voter statistics), *rev'd on other grounds*, 581 F.3d 841 (9th Cir. 2009); *R.S.B. Ventures, Inc. v. FDIC*, 514 F. App'x 853, 856 n.2 (11th Cir. 2013) (taking judicial notice of the information on the FDIC's website); *Gent v. CUNA Mutual Ins. Society,* 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of facts from the Center for Disease Control and Prevention website).

Plaintiffs knew or should have known of these "facts" prior to Election Day 2020, and are barred from raising them now. The law requires challenges to election procedures to be raised before the election is conducted. This rule protects voters and reflects common sense: pre-election challenges allow problems to be fixed *before* the election is held, without disrupting votes *after* they have been cast.

This bedrock rule of election law is a forceful application of laches. The equitable doctrine of laches "bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant." *Amtrak v. Morgan*, 536 U.S. 101, 121-22 (2002). "To establish laches, a defendant must demonstrate (1) a delay in asserting a right or a claim, (2) that the delay was not excusable, and (3) that there was undue prejudice to the party against whom the claim is asserted." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986); *Costello v. United States*, 365 U.S. 265, 282 (1961); *see also Plyman v. Glynn Cty.*, 578 S.E.2d 124, 126 (Ga. 2003) (Georgia law). "[L]aches may be asserted by motion to dismiss for failure to state a claim— provided that the complaint shows affirmatively that the claim is barred." *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958); *see also Motley v. Taylor*, 451 F. Supp. 3d 1251, 1276 (M.D. Ala. 2020).

Since overturning the results of an election is an extraordinary intervention by the judiciary into democratic processes, a challenge to election procedures should be brought *when there is still time to correct those procedures*. Otherwise, parties could "lay by and gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo the ballot results in a court action." *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (quoting *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973)). "Courts have been wary lest the granting of post-

election relief encourage sandbagging on the part of wily plaintiffs." *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1180 (11th Cir. 1988).

Numerous cases confirm this "general rule" of election law: "a candidate or other election participants should not be allowed to ambush an adversary or subvert the election process by intentionally delaying a request for remedial action to see first whether they will be successful at the polls." *United States v. City of Cambridge, Md.*, 799 F.2d 137, 141 (4th Cir. 1986); *see also, e.g.*, *Carlson v. Ritchie*, 830 N.W.2d 887, 892 (Minn. 2013) ("[P]etitioners cannot wait until after elections are over to raise challenges that could have been addressed before the election."); *Lewis v. Cayetano*, 823 P.2d 738, 741 (Haw. 1992) (laches barred post-election challenge to form of ballot, where voters had at least constructive notice of the form for a month prior to the election).

If Plaintiffs were right that Georgia officials were permitting tens of thousands of non-citizens or voters who were otherwise ineligible to cast a ballot, *see* Compl., Doc. 1 ¶¶ 40-41, they could have informed Defendants of their concerns or raised legal claims in state or federal court in the weeks or months in advance of Election Day. "Plaintiffs were not faced with a binary choice and should have sought court intervention sooner." *Gwinnett Cty. NAACP v. Gwinnett Cty. Bd. of Registration and Elections*, 446 F. Supp. 3d 1111, 1126-27 (N.D. Ga. 2020); *see also Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 404-05 (E.D. Pa. 2016) (declining to enjoin aspects of Pennsylvania's poll-watcher statute in case filed "eighteen days before the election," observing that "Plaintiffs unreasonably delayed filing their Complaint and Motion, something which weighs decidedly against granting the extraordinary relief they seek").

Plaintiffs' delay was clearly prejudicial. By waiting until after the end of counting, Plaintiffs now try to cast a cloud over ballots cast in good faith by millions of Georgia voters in the Defendant counties. That includes voters like Intervenors President Woodall, Ms. Butler, and

Rev. Ivey, who took all necessary steps to ensure that their voices count in this election. Moreover, even assuming *arguendo* that there were problems with the conduct of the election in the Defendant counties and that any such conduct gave rise to constitutional concerns, if Plaintiffs had timely asserted these claims, Defendants could have taken additional steps to ensure equal treatment of rejected ballots.

## CONCLUSION

For the reasons stated above, the Court should grant Proposed Intervenors' Motion to Dismiss this case.

Respectfully submitted this 14th day of November, 2020.

>  */s/ Philip Sandick*
> Derin Dickerson (*pro hac vice* application forthcoming)
> Georgia Bar No. 220620
> derin.dickerson@alston.com
> Jahnisa Loadholt  (*pro hac vice* application forthcoming)
> Georgia Bar No. 940679
> jahnisa.loadholt@alston.com
> Gavin Reinke (*pro hac vice* application forthcoming)
> Georgia Bar No. 159424
> gavin.reinke@alston.com
> Philip Sandick
> Georgia Bar No. 217486
> phil.sandick@alston.com
> Kristi Ramsay (*pro hac vice* application forthcoming)
> Georgia Bar No. 964749
> kristi.ramsay@alston.com
> **ALSTON & BIRD LLP**
> 1201 West Peachtree Street
> Atlanta, Georgia 30309
> Telephone: (404) 881-7000
> Facsimile: (404) 881-7777

*/s/ Jon M. Greenbaum*
Kristen Clarke (*pro hac vice* application forthcoming)
kclarke@lawyerscommittee.org
Jon M. Greenbaum (*pro hac vice* application forthcoming)
jgreenbaum@lawyerscommittee.org
Ezra D. Rosenberg (*pro hac vice* application forthcoming)
erosenberg@lawyerscommittee.org
Julie M. Houk (*pro hac vice* application forthcoming)
jhouk@lawyerscommittee.org
John Powers (*pro hac vice* application forthcoming)
jpowers@lawyerscommittee.org
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8300


*/s/ William V. Custer*
William V. Custer
Georgia Bar No. 202910
bill.custer@bclplaw.com
Jennifer B. Dempsey (*pro hac vice* application forthcoming)
Georgia Bar No. 217536
jennifer.dempsey@bclplaw.com
Christian J. Bromley (*pro hac vice* application forthcoming)
Georgia Bar No. 206633
christian.bromley@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Atlantic Center | Fourteenth Floor
1201 W. Peachtree Street, N.W.
Atlanta, Georgia  30309
Telephone: (404) 572-6600
Facsimile: (404) 572-6999

*Attorneys for Proposed Defendant-Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Philip Sandick*
Philip Sandick
Georgia Bar No. 217486
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
phil.sandick@alston.com

*Attorney for Proposed Defendant-Intervenors*
*Georgia State Conference of the NAACP,*
*Georgia Coalition for the People's Agenda,*
*James Woodall, Helen Butler, and Melvin Ivey*